# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: APPLICATION OF CALIFORNIA STATE TEACHERS RETIREMENT SYSTEM FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING | Civil Action No. 19-16458 (FLW) (DEA)<br><br><br>*Document electronically filed* |

---

**REPLY BRIEF IN FURTHER SUPPORT OF APPEAL OF ORDERS GRANTING *EX PARTE* APPLICATION FOR LEAVE TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782, DIRECTING COMPLIANCE WITH SUBPOENA, DENYING MOTION FOR RECONSIDERATION AND DENYING MOTION TO QUASH, AND IN OPPOSITION TO PLAINTIFF'S CROSS-APPEAL OF ORDER GRANTING MOTION TO STAY PENDING APPEAL**

---

Michael R. Griffinger, Esq.
Samuel I. Portnoy, Esq.
Charlotte Howells, Esq.
Genna A. Conti, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500

*Attorneys for Novo Nordisk, Inc.*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................... iii

PRELIMINARY STATEMENT ..............................................................1

ARGUMENT .........................................................................................6

    I.     JUDGE ARPERT'S ORDERS REGARDING THE 1782
          APPLICATION SHOULD BE REVIEWED *DE NOVO*. ...................6

    II.    JUDGE ARPERT ERRED IN GRANTING CALSTRS'S
          SECTION 1782 APPLICATION. ........................................................8

          A.    Judge Arpert Erred in Granting CalSTRS's Section 1782
                   Application Because It Authorizes a Fishing Expedition
                   for Claims for Which Discovery Is Unavailable Under
                   Either Foreign or U.S. Law ...........................................................8

                1.    Danish Law Prohibits the Discovery Sought by
                       CalSTRS. ..............................................................................9

                2.    CalSTRS Would Not Be Entitled to Discovery On
                       Its Temporary Writ Under U.S. Law. ..................................9

                     a.    CalSTRS's Writ Is a Threadbare, Temporary
                             Placeholder. ...............................................................10

                     b.    The Securities Class Action Against NNAS
                             Pending in this District Has No Bearing on
                             the Sufficiency of CalSTRS's Writ. ......................13

                3.    CalSTRS's Section 1782 Application Is An
                       Impermissible Fishing Expedition. ..................................17

            B.    Judge Arpert Erred in Finding that the First *Intel* Factor
                   Weighs in Favor of CalSTRS's Application, Since the
                     Requested Discovery Was Available in Denmark. ...................20

            C.    Judge Arpert Erred in Finding that the Third *Intel* Factor
                   Weighs in Favor of CalSTRS's Application, as CalSTRS

i

Clearly Sought to Circumvent Danish Discovery
Limitations. ...............................................................................23

D.   Judge Arpert Erred in Finding that CalSTRS's Subpoena
Does Not Impose An Undue Burden on NNI and that the
Fourth *Intel* Factor Did Not Weigh Against CalSTRS's
Application. ...........................................................................27

E.   CalSTRS's Section 1782 Application Undermines The
Policy Goals Section 1782 Was Enacted To Promote. .............29

III.   JUDGE ARPERT DID NOT ERR IN GRANTING
DEFENDANT'S MOTION TO STAY PENDING APPEAL ............30

CONCLUSION .......................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CBD & Sons, Ltd. v. Setteducati*,
  No. CV 18-4276 (BRM), 2019 WL 8268543 (D.N.J. Aug. 6, 2019)................33

*Doe v. Hartford Life and Accident Ins. Co.*,
  237 F.R.D. 545 (D.N.J. 2006)............................................................................7

*In re Application for Discovery for Use in Foreign Proceeding
  Pursuant to 28 U.S.C. § 1782*, No. 17-4269-KM-JBC, 2019 WL
  168828 (D.N.J. Jan. 10, 2019) .....................................................6, 21, 23, 24, 25

*In re Application for Order Permitting Metallgesellschaft, AG to Take
  Discovery*,
  1212 F.3d 77 (2d Cir. 1997) ..................................................................................24

*In re Application of Gilead Pharmasset LLC*,
  No. 14-mc-243 (GMS), 2015 WL 1903957 (D. Del. Apr. 14, 2015) ...............23

*In re Application Pursuant to 28 U.S.C. §1782 of Michael Page do
  Brasil Ltda.*, No. CV 17-4269 (KM), 2018 WL 7018716 (D.N.J.
  Jan. 19, 2018).........................................................................................19, 24, 27

*In re EWE Gasspeicher GmbH*,
  No. CV 19-MC-109-RGA, 2020 WL 1272612 (D. Del. Mar. 17,
  2020) ..................................................................................................................26

*In re Joint Stock Co. Raiffeinsenbank*, No. 16-mc-80203, 2016 WL
  6474224 (N.D. Cal. Nov. 2, 2016) ....................................................................24

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004)................*passim*

*In Re Microsoft Corp.*,
  428 F. Supp. 2d 188 (S.D.N.Y. 2006) ...............................................................24

*In re Novo Nordisk Sec. Litig.*,
  No. 17-cv-0209 (D.N.J.) .............................................................................14, 15

*In re Revel AC, Inc.*,
    802 F.3d 558 (3d Cir. 2015) ...............................................................30, 31, 32, 34

*In re Target Indus., Inc.*,
    328 B.R. 99 (D.N.J. 2005) ..................................................................................15

*Kulzer v. Esschem, Inc.*,
    390 F. App'x 88 (3d Cir. 2010) .........................................................................23

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
    848 F.2d 414 (3d Cir. 1988) ..............................................................................12

*Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*,
    Inc., 106 F. Supp. 2d 761 (D.N.J. 2000) ............................................................7

## Statutes

28 U.S.C. § 1782 ................................................................................*passim*

28 U.S.C. § 1782(a) ..............................................................................23

PSLRA ................................................................................2, 10, 14, 16

## Rules

L. Civ. R. 72.1(c)(1)(A) .........................................................................31

Fed. R. Civ. P. 45(d)(3) ..........................................................................35

## Treatises

12 Wright Miller, *Federal Practice and Procedure* § 3068.2 (3d ed.
    2014) .........................................................................................6

## PRELIMINARY STATEMENT[1]

CalSTRS's Section 1782 Application impermissibly seeks discovery disallowed in Denmark and the United States and should have been rejected under any reasonable evaluation of the *Intel* factors.  Unable to meet NNI's showings on these points, CalSTRS can only respond to them by mischaracterizing or ignoring NNI's arguments or distorting or simply omitting relevant facts.

For example, when CalSTRS filed its Writ in Denmark, it freely admitted that it did so to toll the running of the statute of limitations, stating "[t]he facts of the case will be detailed in a future pleading."  It then sought to stay the Danish Proceeding, so it could at some later date, prepare "an amended statement of claim."  Now that NNI has made clear that the threadbare nature of that temporary Writ weighs against CalSTRS's Section 1782 Application, CalSTRS seeks to describe the Writ as an actual, well developed pleading—a contention that cannot withstand even a modicum of scrutiny.  The same is true of CalSTRS's newly advanced assertion that the Danish Proceeding has been progressing.  In reality, although pending for

---

[1] On July 8, 2020, NNI filed a Motion to Strike CalSTRS's Opposition to NNI's Appeal and Cross-Appeal or, in the Alternative, for an Extension of Time to File Reply/Opposition Brief ("Motion to Strike"), which is currently pending before this Court.  *See* ECF No. 30.  Because the Motion to Strike has not yet been decided, the instant brief is being filed as a precaution.  It is not intended to moot the pending Motion to Strike.  NNI reserves the right to refile a revised Reply Brief in Further Support of Appeal and in Opposition to CalSTRS's Cross-Appeal in the event that an extension of time is granted.

11 months, the proceeding has been at a near standstill and CalSTRS has actively sought to keep it that way.

In another misleading effort to pass off its Writ as an actual pleading, CalSTRS argues that NNAS never attacked its sufficiency in Denmark. But, incredibly, CalSTRS omits any discussion of the "Statement of Defence" NNAS filed in Denmark, which does precisely that.

CalSTRS simply does not address NNI's argument that Judge Arpert should have considered the bounds of Danish discovery law, including because both parties agree on it. This is a fact that distinguishes this case from all of the cases on which Judge Arpert relied. Nor can CalSTRS refute that the PSLRA would foreclose discovery on CalSTRS's Writ were it filed in the United States. CalSTRS's attempt to compare its Writ to a 295-paragraph U.S. securities class action complaint, amended without the benefit of discovery and challenged on a motion to dismiss, lacks even superficial credibility. The pleadings are not comparable and the matters, venued in different countries, involve different parties, claims, and laws.

CalSTRS's argument that the PSLRA does not apply to Section 1782 applications misses the point entirely, which is that it would be anomalous and illogical to allow a foreign litigant to secure via Section 1782 that which it manifestly could not obtain *either* after initiating the action in its home forum *or* in the United States. And, contrary to CalSTRS's assertion, this argument does not relate to only

a single statutory requisite of Section 1782 or a single *Intel* factor.   Rather, it implicates the core purpose of Section 1782 and the propriety as a general matter of any application advanced pursuant to it.

CalSTRS has also failed to meaningfully counter NNI's showing that the first *Intel* factor, which focuses on whether the discovery sought is within the foreign tribunal's jurisdictional reach, should have weighed against CalSTRS's Application. CalSTRS glosses over the unequivocal wording of its subpoena, each request of which seeks communications between NNI and NNAS, a Danish company, that is clearly within the Danish court's jurisdictional reach.   CalSTRS likewise ignores its counsel's own prior sworn statement describing the subpoena in precisely that fashion, without mention of any discovery solely internal to NNI.   CalSTRS's argument that it has not yet attempted to seek discovery from NNAS in Denmark for lack of opportunity is particularly disingenuous, insofar as CalSTRS has filed a motion to stay the Danish Proceeding, a motion that remains pending.   CalSTRS's argument that it was not required to exhaust discovery mechanisms in Denmark before resorting to Section 1782 is based on yet another mischaracterization of NNI's position.   NNI does not argue that exhaustion is necessary, only that, at a minimum, some attempt should be made, a proposition that finds ample support in prevailing law.   Judge Arpert should have considered CalSTRS's failure to make

such an attempt not only in weighing the first *Intel* factor, but the third and fourth factors as well, a proposition CalSTRS does not dispute.

CalSTRS has also failed to meaningfully counter NNI's showing that Judge Arpert improperly interpreted and applied the third *Intel* factor—focusing on whether the applicant seeks to evade foreign restrictions on discovery. CalSTRS and NNI agree that Denmark does not allow discovery of the breadth sought in CalSTRS's subpoena. CalSTRS filed a temporary Writ, sought to stay the Danish Proceeding, and filed a Section 1782 application seeking discovery from NNI that should be within NNAS's possession and within Denmark's jurisdictional reach. The conclusion that CalSTRS took these steps in an effort to bypass the restrictions of Danish law is inexorable.

CalSTRS also cannot refute NNI's showing that Judge Arpert erred in finding that the fourth *Intel* factor weighs in favor of CalSTRS's Application, and in his refusing to quash CalSTRS's Subpoena. The notion that the Writ is sufficiently detailed to support CalSTRS's subpoena is disproven by the Writ itself and the admissions of CalSTRS's counsel. No judge can properly evaluate whether CalSTRS's subpoena is proportionate to CalSTRS's needs, given that the opening pleading is itself a temporary placeholder. Unable to meet NNI's arguments, CalSTRS overstates Judge Arpert's actual ruling and, without any basis, contends

that NNI has never challenged the breadth of the subpoena, an assertion disproven, of course, by NNI's motion to quash.

Ignored almost completely by CalSTRS is NNI's showing that CalSTRS's Application threatens to turn this District into a clearinghouse for broad discovery requests from foreign litigants, impose the United States' broad brand of discovery on foreign countries, and threaten the very comity and cooperation with such countries that Section 1782 was meant to encourage. CalSTRS would have this Court disregard Section 1782's architect's own statements as to why the statute was drafted.

CalSTRS's Cross-Appeal of Judge Arpert's Order staying discovery pending appeal must be rejected. Judge Arpert correctly concluded that there is more than a negligible chance that this Court will determine that he erred in granting CalSTRS's Application, that NNI would suffer irreparable harm absent a stay (because any production would essentially moot a meaningful appeal), and that CalSTRS has admitted that it will suffer no appreciable harm as a result of the stay because it previously sought identical relief in Denmark. Moreover, CalSTRS has not even contested Judge Arpert's findings that public policy and judicial economy weigh in favor of the stay.

Accordingly, this Court should reverse Judge Arpert's Orders granting CalSTRS's Section 1782 Application and denying NNI's Motion to Quash and affirm Judge Arpert's Order granting the stay pending appeal.

## ARGUMENT

## I.   JUDGE ARPERT'S ORDERS REGARDING THE 1782 APPLICATION SHOULD BE REVIEWED *DE NOVO*.

As explained in NNI's opening papers, this Court should review Judge Arpert's orders *de novo*.  ECF No. 27-1 at 9-11.  CalSTRS is forced to concede (*see* ECF No. 29-1 at 11 n.4) that even though judges in this District have applied the clear error standard in the past, in the most recent decision from this District to address the issue, Judge McNulty applied the *de novo* standard of review.  *See In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, No. 17-4269-KM-JBC, 2019 WL 168828, at *4 (D.N.J. Jan. 10, 2019) (noting that the issue was unsettled, but applying *de novo* standard to Magistrate Judge's ruling on section 1782 application).  That pronouncement is not only the most recent, but also the most sound.  As Judge McNulty explained, adjudications of section 1782 applications should be reviewed *de novo* because they are, in essence, dispositive determinations.  *Id.* ("[T]he sole relief sought . . . is the obtaining of discovery, so in that sense, a Magistrate Judge's ruling either way would dispose of the entire case." (citation omitted)); *accord* 12 Wright Miller, *Federal Practice and Procedure* § 3068.2 (3d ed. 2014) ("The sole purpose of the [section

6

1782] proceeding is to obtain discovery, and accordingly, a motion to compel such discovery is a final, dispositive matter."). As this District has now recognized, the practical effect of the disposition of a Section 1782 application—that is, a ruling to grant or deny the application—is, by its very nature, dispositive of the entire proceeding. Accordingly, the proper standard of review of a section 1782 application is *de novo*.

Moreover, even if this Court were to determine that an order resolving a Section 1782 application is non-dispositive, it is well established that legal determinations, even on non-dispositive motions, are reviewed *de novo*. *Doe v. Hartford Life and Accident Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006); *see Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*, Inc., 106 F. Supp. 2d 761, 764 (D.N.J. 2000) (A Magistrate Judge's legal conclusions on a non-dispositive motion are reviewed *de novo* and the decision will be overturned if "the magistrate judge has misinterpreted or misapplied the applicable law"). This appeal implicates not only Judge Arpert's application of Section 1782 and the *Intel* factors, but also his interpretation of them, which undoubtedly are legal questions for which *de novo* review is appropriate.

Regardless, Judge Arpert's Orders warrant reversal even under a clear error standard. As NNI has discussed, CalSTRS's attempt to keep the Danish Proceeding at a standstill during the pendency of this matter and its failure to even attempt to

seek discovery from NNAS in Denmark before resorting to Section 1782 are facts that Judge Arpert either did not address or did not properly address in his analysis. And, NNI has identified certain principles of law that Judge Arpert overlooked including: (i) the propriety of considering the bounds of foreign discovery laws when the parties agree on those bounds; (ii) authority making clear that the discovery CalSTRS seeks via Section 1782 is impermissible in the U.S.; (iii) authority making clear that filing a temporary pleading and then immediately seeking a stay of the foreign proceeding and filing a 1782 application to seek discovery that is within the jurisdiction of the foreign tribunal demonstrates a misuse of Section 1782; and (iv) a temporary, threadbare Writ cannot support a subpoena because there is no way to determine whether the discovery sought is proportionate to the applicant's needs. As a result, Judge Arpert's Orders warrant reversal even under a clear error standard of review.

## II. JUDGE ARPERT ERRED IN GRANTING CALSTRS'S SECTION 1782 APPLICATION.

### A. Judge Arpert Erred in Granting CalSTRS's Section 1782 Application Because It Authorizes a Fishing Expedition for Claims for Which Discovery Is Unavailable Under Either Foreign or U.S. Law

As explained in NNI's moving brief, CalSTRS's Section 1782 Application is improper and should have been rejected because it seeks discovery unavailable in either Denmark or the United States for the purpose of articulating claims—

essentially a claims-fishing expedition.  ECF No. 27-1 at 11-20.  Each of CalSTRS's arguments to the contrary are unavailing.

### 1.  Danish Law Prohibits the Discovery Sought by CalSTRS.

CalSTRS does not meaningfully address NNI's argument that Judge Arpert should have considered the bounds of Danish law including because here, those limitations are not in dispute.  ECF No. 27-1 at 12-15.  Indeed, the parties' respective interpretations of Danish discovery law are nearly identical.  *Id.* at 12-13.  All of the cases cited by Judge Arpert and CalSTRS for the proposition that the bounds of foreign law need not be considered are distinguishable on this basis; in each case, the contours of the foreign law at issue was in dispute.  *See* ECF No. 27-1 at 13-14. Accordingly, under these unique circumstances, Judge Arpert's failure to consider the bounds of Danish law—which CalSTRS and NNI agree would not permit discovery of the breadth sought in CalSTRS's subpoena—was error.

### 2.  CalSTRS Would Not Be Entitled to Discovery On Its Temporary Writ Under U.S. Law.

CalSTRS has already admitted—in the Writ itself and prior declarations of counsel—that the Writ is a temporary placeholder filed for the purpose of meeting a limitations period deadline.  For this reason, CalSTRS's attempt to now paint the Writ as its operative pleading, largely through assertions introduced for the first time in opposition to NNI's appeal, should not be credited; it is undermined by the Writ itself, CalSTRS's prior sworn statements, and even other portions of CalSTRS's

opposition. CalSTRS's argument that NNAS has not contested the validity of the Writ in Denmark is simply wrong. CalSTRS has conveniently omitted from its discussion NNAS's Statement of Defence which attacks the Writ on precisely that ground. CalSTRS's repeated and desperate attempts to draw comparisons between the Writ and the amended complaint in the securities class action against NNAS pending in this District must also be rejected. The documents and proceedings are simply not comparable. In sum, CalSTRS cannot escape the fact that it would not be entitled to discovery if it filed its temporary, threadbare Writ in the United States. The PSLRA would bar it automatically and the Writ stands no chance of surviving a motion to dismiss, points CalSTRS does not dispute. CalSTRS's argument that the PSLRA does not apply to Section 1782 Applications misses the critical point, which is that allowing CalSTRS to use Section 1782 to gain discovery that would be unavailable under Danish or U.S. law is anomalous, illogical, and at odds with the goals for which the statute was created.

### a. CalSTRS's Writ Is a Threadbare, Temporary Placeholder.

CalSTRS asserts, with the support of statements introduced for the first time in opposition to NNI's appeal, that the Writ is an operative pleading sufficiently detailed to support discovery. Specifically, CalSTRS asserts that the Writ is not temporary and that the term "provisional" means only that its facts or damages methodology may be amended. *See* ECF No. 29-1 at 27 (citing ECF No. 29-2 at

¶ 4).   But, CalSTRS's new position is not reconcilable with the Writ itself or CalSTRS's prior sworn statements, which make clear that CalSTRS has always considered the Writ a temporary placeholder.

According to the Writ itself "[t]he facts of the case will be detailed in a future pleading, noting that the present writ was submitted to interrupt the limitations period."   ECF No. 1-10 at 2.   In its stay application filed in Denmark, CalSTRS explained that a purpose of its Section 1782 Application was to obtain "more details" for its "statement of claim."   ECF No. 18-8, Ex. A.   In a declaration filed in this District in further support of its Application, CalSTRS's counsel admitted that it seeks the discovery at issue "to amend [the Writ] to include more specific factual allegations."   ECF No. 8-1 ¶ 5.   In fact, even in its opposition brief CalSTRS admits that the Writ was temporary and filed to avoid a limitations period defense.   ECF No. 29-1 at 6 ("The Danish Statement of Claim also disclosed it was being filed to toll the statute of limitations and an amended statement of claim should be expected . . . .").

Of course, CalSTRS's prior descriptions of the Writ as temporary and in need of amendment make perfect sense in the context in which they were issued—an attempt to secure a stay that would keep the Danish Proceeding at a standstill.   Now that its prior characterizations of the Writ undermine its Section 1782 Application, CalSTRS is attempting to recast the Writ as operative and more substantial.

11

CalSTRS, however, is estopped from reversing course on previous positions taken in this very litigation simply because its needs have changed. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir. 1988) (The doctrine of judicial estoppel "applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted").

In a further effort to recast its Writ as an operative pleading, CalSTRS argues that NNAS did not challenge the Writ in Denmark on vagueness grounds. The argument is wrong. CalSTRS failed to note that NNAS filed a Statement of Defence in Denmark which thoroughly attacks the Writ on those precise grounds. Supplemental Declaration of Henriette Gernaa ("Supp. Gernaa Decl.") ¶ 5. Relevant assertions made in that Statement of Defence include:

- The Writ, which is only "four pages" does not "even state one or more specific facts in support of Novo Nordisk having a basis of liability;"

- It is "very unclear which facts the plaintiffs rely on and under which legal basis;"

- "The Plaintiffs' statement of claim is insufficient and consists of undocumented assumptions and information, which cannot be taken into account. Novo Nordisk contests the Plaintiffs' statement of claim in its entirety."

- CalSTRS's "approach is fundamentally incompatible with the requirements for a writ of summons under the Danish Administration of Justice Act;"

- "In other words, the writ of summons is highly inadequate."

*Id.* CalSTRS's decision to assert that NNAS has not challenged the sufficiency of the Writ in Denmark, but to omit any discussion of NNAS's Statement of Defence, is a startling example of CalSTRS's efforts to avoid addressing facts that undermine its position.

CalSTRS's attempt to suggest that the Writ is an actual pleading because the Danish Proceeding supposedly is an "active and progressing proceeding" that has "progressed" for 11 months fares no better.  In reality, other than the filing of the Writ, CalSTRS's motion to stay, NNAS's Statement of Defence, and the transfer of the matter to the Danish High Court, the matter has essentially been at a standstill since it was commenced.  Supp. Gernaa Decl.  ¶ 6.  And, CalSTRS filed a stay motion, which has not yet been decided, *id.*, in an effort to keep it that way.  In fact, the conference CalSTRS referenced that is schedule for August is to discuss procedures for beginning to move the case forward.  *Id.* ¶ 7.  In sum, the Danish Proceeding has not progressed in any way sufficient to support the notion that the Writ is anything other than the temporary placeholder CalSTRS has always considered it.

> **b.** **The Securities Class Action Against NNAS Pending in this District Has No Bearing on the Sufficiency of CalSTRS's Writ.**

Throughout the pendency of CalSTRS's Section 1782 Application, CalSTRS has attempted to draw comparisons between its "claims" under Danish law in the

Danish Proceeding and those advanced by other entities under U.S. law in the securities class action pending in this District captioned *In re Novo Nordisk Securities Litigation*, No. 17-cv-0209 (D.N.J.).  In essence, the argument is that CalSTRS should be able to take discovery on its Writ in the United States because other plaintiffs in a U.S. securities case were entitled to take discovery on their complaint.  The effort, which continues even now, *see* ECF No. 29-1 at 6 n.3, must be rejected. As NNI has previously articulated, *see* ECF No. 18 at 23; ECF No. 26 at 13-15, the two proceedings, and the claims advanced in them, are not comparable.[2]

Unlike the complaint in the U.S. securities case, the Writ in the Danish Proceeding is admittedly temporary and ***has not*** withstood any challenge, let alone survived the equivalent of a motion to dismiss.  As a result, the PSLRA would prevent any discovery were the action filed here.  ECF No. 27-1 at 15-17.  CalSTRS side-steps this point in its opposition because it cannot be refuted.

To the extent CalSTRS is predicting that its Writ would survive a motion to dismiss in the United States or Denmark, the position is untenable.  As discussed, CalSTRS filed its Writ only to avoid a claims limitation period defense and made clear—repeatedly—that it intends to amend it.  Of course, this description fits the Writ perfectly, which spans only a handful of pages and, as NNAS articulated in its

---

[2] If they were comparable, one wonders why plaintiffs in Denmark did not file suit in 2017 or 2018.

Statement of Defence, describes claims in preliminary and exceedingly general terms.  ECF No. 1-10 at 2-5.  Even CalSTRS's generous characterization of the Writ's allegations (*see* ECF No. 29-1 at 5-6) cannot help but betray its threadbare nature.

The complaint in the U.S. securities case, in contrast, was amended ***without discovery*** before being tested on a motion to dismiss.  *In re Novo Nordisk Sec. Litig.*, No. 17-cv-0209 (D.N.J.) at ECF No. 71.  Although NNAS continues to maintain that even that amended complaint should have been dismissed under U.S. pleading standards, the pleading spans 159 pages and 295 numbered paragraphs, and the plaintiffs at least purported to identify the specific misstatements and omissions on which the complaint's U.S. law claims were based.  *Id.*  It cannot be compared to the Writ.  No one can seriously maintain that a ruling on the legal sufficiency of the U.S. securities *amended* complaint indicates the legal sufficiency of the Writ's Danish law claims.

And, even if some meaningful comparison could be drawn between the two pleading documents, the U.S. securities class action and the Danish Proceeding involve different parties, different claims and different laws, meaning that principles of *res judicata* also cannot apply to validate the Writ.  *See In re Target Indus., Inc.*, 328 B.R. 99, 115, 119 (D.N.J. 2005).  As a result, this District's treatment of the securities class action complaint (after it was amended without discovery) in a

completely separate matter has no bearing on whether CalSTRS's Writ could entitle it to discovery in the United States.  It cannot.  As NNI has repeatedly argued, in light of the threadbare, temporary nature of the Writ, it is impossible to determine whether CalSTRS's discovery requests are proportionate to its needs.  CalSTRS's attempt to conflate the U.S. Securities class action and the Danish Proceeding must be disregarded as yet another ploy to pass off the Writ as a substantive pleading.[3]

Finally, CalSTRS attempts to counter NNI's PSLRA argument by asserting, in essence, that the PSLRA does not apply to Section 1782 applications.  *See* ECF No. 29-1 at 16 (Judge Arpert was not required to impose a "PSLRA class action stay of discovery").  This argument is a straw man.  NNI does not contend that the PSLRA applies to a Section 1782 application.  But CalSTRS has no explanation for how it comports with either law or logic for it to obtain via Section 1782 that which is otherwise unavailable in *both* its home forum *and* in this one.  CalSTRS has never been able to counter this basic proposition, and it is fatal to CalSTRS's position.

---

[3] CalSTRS's factual assertions regarding its status as a class member and the amount of damages it might pursue in the United States, *see* ECF No. 29-1 at 3-4, have no bearing whatsoever on whether CalSTRS would be entitled to discovery on its temporary threadbare Writ were it filed in the United States.  In any event, these factual assertions should be disregarded not only because they are raised for the first time in opposition to NNI's appeal, but also because they are asserted in a brief without any supporting factual affidavit or declaration.

### 3.     CalSTRS's Section 1782 Application Is An Impermissible Fishing Expedition.

As NNI explained in its moving brief, the prevailing facts allow for no conclusion but that CalSTRS has filed its Section 1782 Application as part of a fishing expedition to articulate claims.   ECF No. 27-1 at 17-20.   As discussed, CalSTRS has admitted the complaint was filed to stop a limitations period and is only temporary.   And, although its subpoena seeks communication with NNAS—documents within Denmark's jurisdictional reach—CalSTRS has not even attempted to seek them in Denmark.   Instead, it filed its Section 1782 application immediately after filing its Writ and then sought to keep the Danish Proceeding at a standstill.   As NNI has already explained, Judge Arpert acknowledged, and the drafters of the statute made clear, such fishing for claims discovery is an impermissible use of Section 1782. *See id.* at 19-20.   CalSTRS's arguments to the contrary are meritless.

First, CalSTRS argues that the purpose of the discovery it seeks is to narrow the Writ and streamline the proceedings in Denmark.   Again, as discussed *supra* II.A.2.a, the statement is at irreconcilable odds with the Writ itself, prior declarations of counsel, and even CalSTRS's opposition brief and so, cannot be credited.

Second, CalSTRS attempts to argue that its Writ is sufficiently detailed and permanent to support the requests in its subpoena by attempting to tie those requests to portions of the Writ. The chart CalSTRS has supplied for this purpose only

17

highlights the disparity between these two documents and the insufficiency of the Writ to support the discovery CalSTRS seeks. *See* ECF No. 29-1 at 17.

For Request No. 1, the Writ's vague allegation of a "scheme where Novo increasing paid higher rebates" to pharmacy benefit managers cannot possibly justify a document request for all communications concerning sales and revenue targets for three different insulin products in the United States.  For Request No. 2, the Writ's vague allegation that NNAS represented that "innovation and product-specific qualities guaranteed preferential prices even in the challenged market" cannot possibly justify a document request for all communications between NNI and NNAS concerning prices and/or pricing for three different insulin products.  Nor can that single nebulous allegation justify Request No. 3, which seeks communications concerning actual sales of three different insulin products, or Request No. 5, which seeks communications concerning the efficacy, safety, and/or quality of three different insulin products.  Similarly, for Request No. 4, the Writ's vague allegation concerning a "scheme" to pay "higher rebates to PBMs to gain access to their formulary" cannot justify the exceedingly broad and amorphous request for all communications concerning the "impact of payments to pharmacy benefits managers on the prices" of three insulin products.  Finally, for Request No. 6, the Writ's hopelessly vague allegation that NNAS intentionally misled investors regarding economic growth cannot possibly justify a document request for all

communications concerning financial analyses or projections for any public statements made by NNAS, including annual reports, quarterly earnings reports, earnings calls, analyst calls, special calls, shareholder calls and analyst/investor days.

In sum, CalSTRS's comparison only reinforces NNI's position that the Subpoena amounts to an improper fishing expedition, which is undoubtedly relevant if not determinative of the Court's adjudication of the propriety of CalSTRS's Application. *See In re Application Pursuant to 28 U.S.C. § 1782 of Michael Page do Brasil Ltda.*, No. CV 17-4269 (KM), 2018 WL 7018716, at *8 (D.N.J. Jan. 19, 2018) (a district court may consider whether a section 1782 application "is part of a 'fishing expedition'").

Third, unable to counter in any meaningful way NNI's argument that CalSTRS cannot be permitted to use Section 1782 to fish for claims discovery unavailable in Denmark or the United States, CalSTRS tries to sidestep it by mischaracterizing it as having relevance only to the second Section 1782 statutory prerequisite—that the discovery sought be "for use" in a foreign proceeding. CalSTRS then cites law for the proposition that the "for use" requisite may be satisfied even where a proceeding has not yet been filed. *See* ECF No. 29-1 at 14- 15. But, NNI has not directed this critically important argument only at Section 1782's second statutory requisite. Rather, it is offered as a fundamental

proposition striking at the very heart and integrity of CalSTRS's Application.  To allow an applicant to use Section 1782 to fish for claims discovery that would not be allowed in its home forum or in the United States does not offend only one statutory requisite or only one *Intel* factor, it offends the entire purpose for which Section 1782 was enacted and the canon that statutory interpretation that would give rise to anomalous or illogical results must be avoided.  Thus, even if CalSTRS's Writ can satisfy Section 1782's "for use" statutory requisite, the Application remains an impermissible fishing expedition for unavailable discovery that should have been rejected.

### B. Judge Arpert Erred in Finding that the First *Intel* Factor Weighs in Favor of CalSTRS's Application, Since the Requested Discovery Was Available in Denmark.

CalSTRS has not demonstrated that the first *Intel* factor, which focuses on whether the discovery sought is within the foreign tribunal's "jurisdictional reach," *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004), weighs in favor of granting the 1782 Application.  Once again, CalSTRS can only meet NNI's position on this point by mischaracterizing it.

First, CalSTRS unsuccessfully attempts to argue that whether its requests target documents in NNAS's possession is irrelevant because a party need not exhaust avenues of discovery available in its home forum before resorting to Section 1782.  But, NNI has never argued that exhaustion is a prerequisite to filing

a Section 1782 Application.  *See* ECF No. 29 at 20.  Rather, NNI's position is that CalSTRS's failure to ***even attempt*** such discovery from NNAS in the first instance should cause the first *Intel* factor (and the third and fourth) to weigh against CalSTRS's Application.  *See* ECF No. 27-1 at 23-26, 30.

The first *Intel* factor "focuses on whether the person from whom discovery is sought is a participant in the foreign proceeding" because, if it is, the necessity of the Section 1782 application is undermined.  *See In re Application for Discovery*, 2019 WL 168828, at *6.  Each request in the Subpoena seeks "[a]ll Documents concerning or reflecting all ***communications between***" NNI and NNAS.  ECF No. 1-1 (emphasis added).  Judge Arpert inappropriately looked past not only the plain terms of each request, but CalSTRS's own previous admission that the subpoena seeks only communications between the two entities.  In its application to stay the Danish Proceeding pending resolution of its 1782 Application, CalSTRS described its Subpoena as seeking "discovery of ***all communication between*** [NNI] and [NNAS]" and made no mention of any internal NNI documents.  *See* ECF No. 27-1 at 23 (citing ECF No. 18-8, Ex. A (emphasis added)).  Even if CalSTRS's *post-hoc* interpretation of the subpoena was properly accepted, the vast majority of the documents it seeks—communications with NNAS—should be within NNAS's possession.  Judge Arpert's analysis of the first *Intel* factor does not appropriately account for this.

CalSTRS also asserts that it cannot be faulted for not attempting to secure discovery from NNAS in Denmark because the Danish Proceeding has not yet proceeded to the point where such a request could be made. *See* ECF No. 29-1 at 21. The argument is disingenuous. The Danish Proceeding has not progressed to the point where such discovery might be attempted largely because of CalSTRS's efforts. It filed a motion to stay the Danish Proceeding almost immediately after filing its Writ. This argument is also irreconcilable with statements in the newly introduced declaration of Thomas Ryhl, which goes to great lengths to suggest that the Danish Proceeding has progressed and developed substantially over the past 11 months. *See* ECF No. 29-2 ¶¶ 7, 8. CalSTRS cannot have it both ways.

In sum, Judge Arpert should have considered the potential availability from NNAS in Denmark of discovery CalSTRS seeks and CalSTRS's refusal to even attempt to obtain that discovery in Denmark before seeking it from non-party NNI as a factor of critical importance not only to the first *Intel* factor, but the third and fourth factors as well. Exhaustion is not the issue. The issue is whether CalSTRS should at least make an attempt to get appropriate discovery its home forum before burdening a non-party in another country and what CalSTRS's refusal to do so suggests in terms of CalSTRS's motives generally. *See In re Application for Discovery*, 2019 WL 168828, at *11 (it is within a court's discretion to "consider a party's failure first to attempt discovery measures in the foreign jurisdiction"

(citation omitted)).  CalSTRS's conduct in this regard calls into question whether its Section 1782 Application is even necessary, a factor Judge Arpert did not meaningfully consider in his analysis.

C.   **Judge Arpert Erred in Finding that the Third *Intel* Factor Weighs in Favor of CalSTRS's Application, as CalSTRS Clearly Sought to Circumvent Danish Discovery Limitations.**

CalSTRS has not demonstrated that the third *Intel* factor, which analyzes "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country of the United States," weighs in favor of granting the Section 1782 Application.  *In re Application of Gilead Pharmasset LLC*, No. 14-mc-243 (GMS), 2015 WL 1903957, at *4 (D. Del. Apr. 14, 2015) (quoting *Intel*, 542 U.S. at 264-65).  Judge Arpert ruled that Danish discovery limitations were not a bar to CalSTRS's 1782 Application because "the Supreme Court in *Intel* specifically rejected a foreign discoverability rule that would categorically bar the production of materials unobtainable in the foreign tribunal." *See* ECF No. 20 at 19.  But, Judge Arpert failed to recognize a crucial part of the analysis, mandating that the Court "consider whether the litigant's motives are tainted by a surreptitious effort to bypass foreign discovery rules[.]"  *Kulzer v. Esschem, Inc.*, 390 F. App'x 88, 92 (3d Cir. 2010) (citing *In re Application for Order Permitting Metallgesellschaft, AG to Take Discovery*, 1212 F.3d 77 (2d Cir. 1997)). That is, as with the first *Intel* factor, in evaluating the third *Intel* factor courts should

23

consider whether the applicant attempted to obtain the requested discovery in the foreign jurisdiction (or, as here, took affirmative steps to avoid doing so) before resorting to Section 1782, along with any other facts suggestive of an attempt to bypass foreign law.  *See In re Application for Discovery*, 2019 WL 168828, at *11 (with respect to the third *Intel* factor, "proof of skullduggery" is not required, but "a party's failure to invoke local discovery procedures remains significant" and may "aid, 'a perception that an applicant has side-stepped' less-than-favorable discovery rules" (quoting *In re Joint Stock Co. Raiffeinsenbank*,  No. 16-mc-80203, 2016 WL 6474224, at *6 (N.D. Cal. Nov. 2, 2016))); *In re Application Pursuant to 28 U.S.C. § 1782 of Michael Page do Brasil Ltda.*, 2018 WL 7018716, at *5 (courts may "properly consider a party's failure first to attempt discovery measures in the foreign jurisdiction"); *In Re Microsoft Corp.*, 428 F. Supp. 2d 188, 195 (S.D.N.Y. 2006) ("[T]he applicant's conduct in the foreign forum is not irrelevant.").

A complete analysis shows that the third *Intel* factor weighs heavily against CalSTRS's Application.   As already discussed—and, contrary to CalSTRS's assertion—because the documents in question should be in NNAS's possession, Judge Arpert incorrectly found that the discovery sought by CalSTRS is outside of Denmark's jurisdictional reach.  Add to that CalSTRS's agreement with NNI that Denmark prohibits discovery of the breadth it seeks, its filing of the Section 1782 Application immediately on the heels of its temporary Writ, and then its near

immediate attempt to stay the Danish Proceeding.  The conclusion that CalSTRS is attempting to evade Denmark's limits on discovery in violation not only of the third *Intel* factor but the basic goals of comity and cooperation that Section 1782 was created to advance is inexorable.  *See* ECF No. 27-1 at 25-28, 32-34.

Notably, CalSTRS fails to meaningfully address in its brief the portion of *In re Application for Discovery*, 2019 WL 168828, at *12 relevant to this analysis. There, the Court concluded that the third *Intel* factor weighed against granting petitioner's section 1782 application where, as here, "before even serving the defendants or seeking discovery in [the foreign jurisdiction, the petitioner] immediately resorted to an expansive § 1782 application."  *Id.*  Such conduct supports a finding of an impermissible attempt to evade foreign discovery restrictions "because rational actors do not needlessly increase their own litigation costs by pursuing discovery via a § 1782 application which is in the possession of a party to the foreign action and which has not been shown to be unobtainable by the foreign tribunal."  *Id.* (citations omitted).  CalSTRS fails to offer any theory as to why the reasoning in *In re Application for Discovery*, 2019 WL 168828, at *12 should not apply here with equal force.

CalSTRS's attempt to distinguish *In re EWE Gasspeicher GmbH*, No. CV 19-MC-109-RGA, 2020 WL 1272612, at *3 (D. Del. Mar. 17, 2020) is unpersuasive. NNI has never tried to hide the fact that the holding of that case was based on a

finding that a private German arbitration did not constitute a "tribunal" for purposes of Section 1782.  In fact, NNI brought that to the Court's attention the first time it cited the case.  *See* ECF No. 21-1 at 19; ECF No. 27-1 at 27-28 n.6.  The portion of the decision concluding that the third *Intel* factor weighed against the Section 1782 application is nonetheless instructive because of the case's exceedingly analogous facts: specifically, both (i) a Section 1782 application submitted months before discovery of a party could even be attempted, and (ii) admittedly strict limits on the scope of discovery in the foreign proceeding.  *In re EWE Gasspeicher GmbH*, 2020 WL 1272612, at *3 (observing that the third *Intel* factor weighed against granting the application, as it would "aid an attempt to circumvent foreign proof-gathering restrictions or other policies").

In sum, Judge Arpert failed to properly interpret the third *Intel* factor in terms of what facts are properly considered in evaluating it, and then failed to properly evaluate the factor in light of those facts.  This was reversible error.  If the facts of this case do not indicate that CalSTRS is attempting to use Section 1782 to evade foreign discovery restrictions, it is difficult to conceive of facts that could.  Judge Arpert should have weighed the critically important third *Intel* factor against CalSTRS's Application.

### D.      Judge Arpert Erred in Finding that CalSTRS's Subpoena Does Not Impose An Undue Burden on NNI and that the Fourth *Intel* Factor Did Not Weigh Against CalSTRS's Application.

NNI has also demonstrated that Judge Arpert erred in concluding that the fourth *Intel* factor—which assesses whether the Application is "unduly intrusive or burdensome," "made in bad faith, for the purpose of harassment," or otherwise a "fishing expedition," *In re Application Pursuant to 28 U.S.C. § 1782 of Michael Page do Brasil Ltda.*, 2018 WL 7018716, at *8 (citations omitted)—weighs in favor of the Section 1782 Application.  For the same reasons, NNI has demonstrated that CalSTRS's subpoena should have been quashed.  CalSTRS has not meaningfully challenged those showings.

As discussed at length above and in NNI's moving brief, CalSTRS's Application is undoubtedly a fishing expedition for claims discovery. *See supra* II.A.3; ECF No. 27-1 at 17-20.  More importantly, the threadbare and temporary Writ should have made it impossible for Judge Arpert to determine whether CalSTRS's subpoena requests are proportionate to CalSTRS's needs.  This renders irrelevant any putative lack of specifics regarding the burden NNI would face in producing the documents (the central basis for Judge Arpert's conclusion with respect to the fourth *Intel* factor and NNI's motion to quash). *See* ECF No. 13 at 10; ECF No. 20 at 19-20.

In any event, Judge Arpert erred because the undue burden the subpoena poses for NNI is evident from the face of the subpoena's exceedingly broad requests, and again, from CalSTRS's failure to even attempt to secure the discovery from party NNAS before seeking it from non-party NNI, issues NNI has already briefed. *See* ECF No. 27-1 at 28-32.

Finally, it must be noted that CalSTRS's contention that NNI did not assert that CaSTRS's Subpoena was unduly burdensome or otherwise seek to narrow it is incorrect.[4]  As CalSTRS well knows, NNI moved to quash the Subpoena and has repeatedly claimed that compliance would unduly burden NNI. *See* ECF No. 18-1. Moreover, CalSTRS mischaracterizes Judge Arpert's legal conclusions—a tactic that pervades its opposition—incorrectly stating that "Magistrate Judge Arpert found that the requested discovery was proportionate to the needs of the Danish Group Action and not unduly burdensome, which is fully supported by the allegations in

---

[4] CalSTRS improperly characterizes NNI's August 21, 2019 letter to the Court, ECF No. 7, as a "Letter Brief" going to the merits of CalSTRS's Section 1782 Application.  *See* ECF No. 29-1 at 26 n.7; *id.* at 27 n.8.  It was not.  Because CalSTRS's *ex parte* Application could have been adjudicated at any time, NNI sent the letter only to make clear that the application was premature, to preview in summary fashion arguments that NNI would make against it, and to notify the Court that NNI was in the process of gathering the information needed to actually oppose the Application. *See* ECF No. 7 at 1 & n.1 (noting premature nature of Application, "expressly preserv[ing]" all rights and "substantive challenges" including "the right to challenge the Application on the merits" and under the Federal Rules); *accord id.* at n.1 (reserving the right to oppose the application "once sufficient information . . . is available").

the Danish Statement of Claim." ECF No. 29-1 at 26. Judge Arpert held only that "the discovery sought is not unduly burdensome or overly intrusive." ECF No. 20 at 20. In any event, for the reasons discussed above and detailed at length in NNI's Appeal Brief, that premature finding too is reversible error.

### E.   CalSTRS's Section 1782 Application Undermines The Policy Goals Section 1782 Was Enacted To Promote.

As discussed in NNI's Appeal Brief, CalSTRS's Section 1782 Application should be rejected because it threatens to turn this District into a clearinghouse for any manner of far-ranging discovery that would not be permitted in foreign fora. Imposing on other countries far broader discovery procedures—procedures that they disavow but which frequently apply in the United States—does not further the goal of Section 1782 to encourage assistance and cooperation. It seeks to supplant more limited discovery regimes with a more expansive one. *See* ECF No. 27-1 at 32-34.

This proposition essentially goes unchallenged in CalSTRS's opposition. The best CalSTRS can do is argue that the clear and unequivocal statements of one of Section 1782's principal draftpersons should be disregarded because it is only persuasive and not technically legislative history. *See* ECF No. 29-1 at 12 n.5. But, CalSTRS does not attempt to challenge the substance of Professor Smit's comments, nor the proposition that its Application is wholly at odds with the goals Professor Smit hoped to accomplish when he helped draft the statute. This is because the proposition cannot be disputed.

And, here again, CalSTRS attempts to mislead by omission.  In support of the above-discussed policy argument, NNI cited not only Professor Smit's article, but case law from this District and elsewhere confirming the goals for which Section 1782 was enacted.  *See* ECF No. 27-1 at 33.  NNI is confident the Court will not be so dismissive of such critically important authority which, as CalSTRS does not dispute, makes clear that CalSTRS's Application undermines Section 1782's central tenets.

## III.   JUDGE ARPERT DID NOT ERR IN GRANTING DEFENDANT'S MOTION TO STAY PENDING APPEAL.

Judge Arpert properly granted NNI's motion to stay the September 20, 2019 and May 13, 2020 Orders, as is clear from his June 22, 2020 Order and Opinion.  *See* ECF No. 28.  The parties agree as to the general standard governing a motion to stay, which is well-settled.  *See In re Revel AC, Inc.*, 802 F.3d 558, 565 (3d Cir. 2015) (in determining whether to issue a stay, courts analyze the following four factors: (1) whether the appellant has made a strong showing of likelihood of success on the merits; (2) whether the appellant will suffer irreparable injury absent a stay; (3) whether a stay will substantially harm other parties with an interest in the litigation; and (4) whether a stay is in the public interest).  And here, in contrast with Judge Arpert's Orders resolving CalSTRS's entire Section 1782 Application, Judge Arpert's Order granting NNI's motion for stay pending appeal is non-dispositive and, as a result, subject to review only for clear error.  L. Civ. R. 72.1(c)(1)(A).  In

30

any event, Judge Arpert's adjudication of NNI's stay motion properly would be affirmed even under a *de novo* standard of review.

First, Judge Arpert correctly concluded that the likelihood-of-success factor weighs in favor of a stay. In contrast to yet another mischaracterization by CalSTRS, Judge Arpert **expressly** determined that there was more than a negligible chance that the District Judge might determine that Judge Arpert erred in his analysis of the *Intel* factors **even if a clear error standard of review applies**. *See* ECF No. 28 at 11-12 (with respect to the first *Revel* factor, the Court "concedes there is more than a negligible chance that the District Judge could find that the Court **abused its discretion**[5] and erred.") (emphasis added). And, as demonstrated by the arguments in this brief and NNI's Appeal Brief, that conclusion is amply supported.

Moreover, Judge Arpert correctly concluded that his own findings concerning the merits of the Appeal were not determinative of whether NNI met its burden on the likelihood-of-success factor. *Id.* at 11 (finding NNI demonstrated likelihood of success notwithstanding Judge Arpert's belief that the District Court will not reverse his decision). Indeed, as set forth in detail in NNI's Motion to Stay, if a party's loss in one court were sufficient to bar it from obtaining a stay pending appeal in another

---

[5] Contrary to Judge Arpert's conclusion, for the reasons already articulated, NNI continues to maintain that Judge Arpert's adjudication of CalSTRS's Section 1782 Application is subject to *de novo* review. *See supra* I; ECF No. 27-1 at 9-11.

court, stays would never be issued.  *See* ECF No. 26 at 10.  Thus, CalSTRS's attack on the validity of Judge Arpert's adjudication of the likelihood-of-success factor should be rejected and Judge Arpert's conclusion should be affirmed.

Second, Judge Arpert correctly found that NNI would suffer irreparable harm absent a stay because the act of disclosure would effectively moot any meaningful right to appeal.  *See* ECF No. 28 at 12 (with respect to second *Revel* factor, finding that NNI "could suffer irreparable harm if, on appeal, this Court's decision is overturned, and [NNI] has already produced the information to CalSTRS.").  This conclusion is in line with weight of authority that NNI cited in support of its stay motion and that CalSTRS did not meaningfully refute.  *See* ECF No. 21-1 at 10-11 (citing cases from the Third Circuit, this District, and elsewhere, for proposition that production is a "discrete, one-time," irreversible act that causes irreparable harm if inappropriately ordered because the attorney receiving the discovery can never "unlearn what has been disclosed" and the producing party can never be returned "to its pre-disclosure position."); ECF No. 26 at 3-5 (collecting cases for proposition that the act of producing documents in response to an erroneously issued order constitutes irreparable harm irrespective of whether the documents contain sensitive or privileged information).

CalSTRS's contention that, in order to satisfy the irreparable harm element, NNI was required to make a specific showing that it would have to produce sensitive

information is simply not the law.[6]   As NNI has also previously explained, CalSTRS's reliance on *CBD & Sons, Ltd. v. Setteducati*, No. CV 18-4276 (BRM), 2019 WL 8268543 (D.N.J. Aug. 6, 2019), is misplaced.   The case is readily distinguishable as the only harm to which the stay applicant could point—document production *costs*—was "remote" and "purely economic."  ECF No. 26 at 3 (citing *CBD & Sons, Ltd.*, 2019 WL 8268543, at *6).  Thus Judge Arpert was correct not to rely on it.

In any event, as NNI has also explained, even if it had to show that CalSTRS's subpoena would require the production of sensitive information, the proposition is evident from the face of the exceedingly overbroad and intrusive requests, which target communications concerning sales, revenue, pricing, efficacy, safety, quality, and other information for three different insulin products as well as communications concerning financial analyses and projections for any public statements made by NNAS, over more than a two year period.  ECF No. 26 at 5-6 (citing ECF No. 1-1).

NNI also demonstrated that, in addition to NNI, NNAS would suffer irreparable harm by virtue of NNI's production because it would deprive NNAS of its right under Danish law to object to and potentially prevent such third-party

---

[6] And, of course, CalSTRS's view of the law on this point cannot be correct from a common sense perspective.  If it were, a party could never demonstrate irreparable harm without making the very disclosure that would cause it.  ECF No. 26 at 6.

productions. ECF No. 21-1 at 10. CalSTRS again argues, as it did before Judge Arpert, that potential harm to NNAS should not factor into the court's analysis because NNAS is not a party to these proceedings. This too is incorrect. *Revel* makes clear that harm to NNAS was properly considered. *Revel*, 802 F.3d at 565 (identifying harm to other parties with an interest in the litigation as a separate factor relevant to stay motions).

Of equal, if not greater, importance to the adjudication of NNI's stay application is CalSTRS's admission that it will suffer no appreciable harm as the result of the stay currently in place. As discussed, CalSTRS new attempt to paint the Danish Proceeding as a rapidly progressing matter for which discovery is urgently needed is simply not credible. In reality, the matter has been at a virtual standstill, and CalSTRS has actively sought to keep it that way. Indeed, CalSTRS sought to stay the Danish Proceeding pending the resolution of its Section 1782 Application **and** "any appeals thereof." ECF No. 26 at 7 (citing ECF No. 19-2 ¶ 5). CalSTRS cannot credibly claim to suffer harm from Judge Arpert's stay when it requested the same relief from the Danish tribunal for itself. Judge Arpert correctly relied on this fact in concluding that the factor of irreparable harm favors the stay he saw fit to issue. ECF No. 28 at 12. And, Judge Arpert also found in support of his conclusion on lack of harm that despite the matter pending since October 2019, CalSTRS had never before complained of any delay. *Id.* This is another finding that

goes unaddressed in CalSTRS's cross-appeal.  Thus, Judge Arpert's conclusions with respect to both irreparable harm to NNI and potential harm (or lack thereof) to others with an interest in the litigation are amply supported and his ultimate conclusion granting NNI's stay motion should be affirmed.

Finally, Judge Arpert also found that both the public interest and judicial economy favor the stay NNI has secured.  *See* ECF No. 28 at 12-13.  These points simply go unaddressed in CalSTRS's Cross-Appeal and should be considered uncontested as a result.  For these reasons, CalSTRS's Cross-Appeal should be denied and Judge Arpert's decision granting NNI's Motion to Stay should be affirmed.

## CONCLUSION

For these reasons, and those stated in NNI's appeal brief, NNI respectfully requests that this Court (1) reverse the Magistrate Judge's Orders granting CalSTRS's *ex parte* Section 1782 Application, directing compliance with CalSTRS's Subpoena, and denying NNI's Motion for Reconsideration or, alternatively, to quash the subpoena pursuant to Fed. R. Civ. P. 45(d)(3); and (2) affirm the Magistrate Judge's Order granting NNI's Motion to Stay Pending Appeal.

<u>s/ Michael R. Griffinger</u>

Dated: July 13, 2020
Newark, New Jersey

Michael R. Griffinger, Esq.
Samuel I. Portnoy, Esq.
Charlotte Howells, Esq.
Genna A. Conti, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500

*Attorneys for Novo Nordisk, Inc.*