# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

IN RE: APPLICATION OF CALIFORNIA STATE TEACHERS RETIREMENT SYSTEM FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING

Civil Action No. 19-16458 (FLW) (DEA)

*Document electronically filed*

## BRIEF IN OPPOSITION TO MOTION TO COMPEL BY ORDER TO SHOW CAUSE

Michael R. Griffinger, Esq.
Samuel I. Portnoy, Esq.
Charlotte Howells, Esq.
Genna A. Conti, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500

*Attorneys for Novo Nordisk, Inc.*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

PRELIMINARY STATEMENT .............................................................. 1

ARGUMENT ......................................................................................... 5

    I.    CALSTRS HAS FAILED TO DEMONSTRATE ANY
        CHANGE IN CIRCUMSTANCE OR THREAT OF HARM
        SUFFICIENT TO WARRANT EMERGENT COURT
        INTERVENTION, STAY RELIEF, OR CIRCUMVENTION
        OF NNI'S APPEAL. .............................................................. 5

        A.    CalSTRS's Unexplained Five-Week Delay in Filing Its
              Motion Itself Should Invalidate the Order to Show Cause.........6

        B.    CalSTRS Has Failed to Demonstrate Harm Sufficient to
              Warrant the Relief it Seeks. ........................................ 8

    II.    CALSTRS HAS FAILED TO DEMONSTRATE THAT THIS
        COURT'S STAY ORDER SHOULD BE LIFTED AND
        GROSSLY MISCHARACTERIZES ITS BASES. ............................ 12

    III.    CALSTRS HAS NOW ADMITTED THAT ITS SECTION
        1782 APPLICATION WAS FILED FOR AN IMPROPER
        PURPOSE. .......................................................................... 16

    IV.    CALSTRS'S NEW REQUEST FOR DISCOVERY FROM A
        SEPARATE LITIGATION CANNOT AND SHOULD NOT
        ISSUE. ................................................................................ 18

CONCLUSION ....................................................................................... 23

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Castillo v. DeRosa*,
No. 04-990 (FLW), 2007 WL 9798514 (D.N.J. Apr. 2, 2007) ...........................8

*Chen v. Ampco System Parking*,
No. 08-CV-0422-BEN (JMA), 2009 WL 2496729 (S.D. Cal. Aug.
14, 2009) ..................................................................................................22

*Database Am., Inc. v. Bellsouth Adver. & Pub. Corp.*,
825 F. Supp. 1216 (D.N.J.1993) .........................................................8

*Diaz v. Muller*,
No. 11-4029, 2011 U.S. Dist. LEXIS 78361 (D.N.J. July 18, 2011) ..................5

*Eisai Inc. v. Sanofi-Aventis U.S., LLC*,
No. 08-4168 (MLC), 2011 WL 5416334 (D.N.J. Nov. 7, 2011) ......................20

*Floyd v. United States*,
No. CIV.A. 15-6371 JBS, 2015 WL 5090096 (D.N.J. Aug. 26,
2015) .....................................................................................................5

*In re Imperial '400' Nat'l Inc.*,
374 F. Supp. 949 (D.N.J. 1974) ..........................................................9

*King Cty. v. Merrill Lynch & Co.*,
No. C10-1156-RSM, 2011 WL 3438491 (W.D. Wash. Aug. 5,
2011) ..................................................................................................21, 22

*Lavergne v. Bryson*,
No. 11-7117 (PGS), 2011 WL 13192893 (D.N.J. Dec. 16, 2011) ......................5

*Legalize Marijuana Party v. New Jersey*,
No. 14-6032 (JBS/AMD), 2014 WL 5410631 (D.N.J. Oct. 23,
2014) .....................................................................................................8

*Maniscalco v. Brother Int'l Corp. (USA)*,
Nos. 3:06-CV-04907(FLW), 3:07-CV-01905(FLW), 2010 WL
762194 (D.N.J. Mar. 5, 2010)..........................................................19

*Midwest Gas Servs., Inc. v. Ind. Gas Co.*,
 No. IP99-0690-C-Y/G, 2000 WL 760700 (S.D. Ind. Mar. 7, 2000) .................21

*Morgan v. Wal-Mart Stores, Inc.*,
 No. 14-4388 (MAS) (LHG), 2014 WL 12774918 (D.N.J. Dec. 12,
 2014) ........................................................................................................................7

*NASC Servs. Inc. v. Jervis*,
 No. 07-CV-5793 (DMC), 2008 WL 2115111 (D.N.J. May 19,
 2008) ........................................................................................................................7

*In re Novo Nordisk Sec. Litig.*,
 17-cv-209 (D.N.J.) ...........................................................................18, 19, 20, 23

*In re Novo Nordisk Sec. Litig.*,
 17-cv-209 (D.N.J.) .................................................................................................23

*Oklahoma v. Tyson Foods, Inc.*,
 No. 05-CV-329-TCK-SAJ, 2006 WL 2862216 (N.D. Okla. Oct. 4,
 2006) .......................................................................................................................22

*Pharmacia Corp. v. Alcon Labs.*,
 201 F. Supp. 2d 335 (D.N.J. 2002) .......................................................................7

*Playboy Entm't Grp., Inc. v. United States*,
 No. 96-94-JFF, 1997 WL 873550 (D. Del. Dec. 11, 1997)................................20

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
 233 F.R.D. 143 (D. Del. 2005) .............................................................................20

*Racing Optics v. Aevoe Corp.*,
 No. 2:15-cv-1774-RCJ-VCF, 2016 WL 4059358 (D. Nev. July 28,
 2016) .......................................................................................................................21

*In re Revel AC, Inc.*,
 802 F.3d 558 (3d Cir. 2015) ...........................................................13, 14, 15, 16

*Taccetta v. Ricci*,
 No. 09-5508 (MLC), 2014 WL 940732 (D.N.J. Mar. 11, 2014)........................8

*Tough Traveler, Ltd. v. Outbound Prods.*,
 60 F.3d 964 (2d Cir. 1995) ....................................................................................7

*Westchester Fire Ins. Co. v. Global Real Construction, LLC*,
    No. 09-207 (JLL), 2009 WL 137414 (D.N.J. Jan. 20, 2009) ..............................6

**Rules**

Fed. R. Civ. P. 34 ..................................................................................................20

L. Civ. R. 65.1 .........................................................................................................5

L. CIV. R. 7.1(g) .......................................................................................................9

Local Civil Rule 65.1 ...............................................................................................5

## PRELIMINARY STATEMENT

The essential requisite of a motion for order to show cause is imminent harm. If the applicant cannot show a need for emergent relief, then its motion must be denied.  Here, the filing date of California State Teachers Retirement System's ("CalSTRS") Motion to Compel by Order to Show Cause ("Motion") itself disproves any need for emergent relief.  CalSTRS argues this Court immediately must take the drastic step of nullifying Novo Nordisk Inc.'s ("NNI") fully briefed appeal by resolving the parties' dispute in CalSTRS's favor and forcing NNI to comply with CalSTRS's underlying subpoena because of an Order issued by the Court in Denmark *more than five (5) weeks ago*.  As its own Motion papers betray, CalSTRS was aware of this Order—which supposedly warrants extraordinary and immediate relief—on *September 1, 2020*, but took no action until now.  Nowhere in its papers does CalSTRS explain how emergent relief possibly could be appropriate in the face of its own delay.  This fact alone should doom CalSTRS's Motion.

Of course, the extreme and prejudicial relief requested by CalSTRS would not be appropriate even had CalSTRS initiated that request by regular motion.  This is because CalSTRS has failed to demonstrate any need for emergent relief or any threat of significant, let alone irreparable, harm posed by the full and fair adjudication of NNI's appeal.  In Denmark, evidence may be accepted up to four weeks before trial (and potentially later).  A trial date for the Danish Proceeding has

1

not been set and trial is not expected to commence even before the end of 2021.  If this Court is to credit CalSTRS's prior representations, here and in Denmark, that it seeks discovery via Section 1782 not to craft its claims, but only to "narrow" or "refine" them and to streamline documentary evidence and testimony to be introduced at trial, then CalSTRS must already be in possession of sufficient evidence to state its claims (which otherwise would have been filed in bad faith) and will not be prejudiced even if the discovery it seeks is produced a year (or more) from now.

The Danish High Court has already reached this conclusion.  When it ordered CalSTRS to amend its pleading by December 4, 2020, it did so fully aware that CalSTRS likely would not receive the discovery it seeks here in advance of that deadline.  Thus, this Motion amounts to yet another attempt by CalSTRS to circumvent the ability of the Danish High Court to control its proceedings.  There is no reason for this Court to contradict the sound conclusion of the Danish High Court, and well-recognized interests in comity and deference strongly countenance against that course.  If the Danish High Court sees no prejudice in CalSTRS filing an amended complaint without the benefit of Section 1782 discovery, neither should this Court.  This is particularly the case given that *NNI* would suffer irreparable harm if deprived of its right to meaningful appeal.  In any event, CalSTRS has not demonstrated that December 4, 2020 will be its only opportunity to amend its

complaint in the Danish Proceeding.  And CalSTRS has still made no effort to seek discovery from Novo Nordisk A/S ("NNAS") in Denmark, meaning that the lack of discovery of which CalSTRS complains is, potentially, a problem of its own making.

CalSTRS's requested relief also should be denied because it is based on a gross mischaracterization of this Court's Order granting NNI's Motion for Stay Pending Appeal.  That decision was based on a careful analysis and application of all applicable factors—likelihood of success on the merits, harm to NNI, harm to others, public policy, and judicial economy.  The Court correctly concluded that each of these factors weigh in favor of the stay it imposed.  CalSTRS simply does not address this Court's conclusion that its Orders on CalSTRS's Section 1782 Application might reasonably be reversed, that NNI will suffer irreparable harm absent a stay pending appeal because it can never be restored to its pre-disclosure posture, and that public policy and judicial economy favor the stay. CalSTRS's Motion attempts to address only one of these factors—harm to parties other than the appellant—and even then only in part.  But, CalSTRS would not be harmed if the stay this Court issued remains in place and, even if it would, the balance of the applicable factors, to which CalSTRS makes no argument, continue to support the stay.

CalSTRS's contention that it needs the discovery it seeks from NNI to craft its actual pleading is inconsistent with its prior representations to this Court and the

Court in Denmark.  CalSTRS previously represented it seeks Section 1782 discovery only to "narrow" its claims and streamline trial proceedings.  Now it asserts it cannot articulate its claims without the discovery.  In other words, contrary to its prior representations, CalSTRS has now confirmed that its Section 1782 Application was filed for the wholly improper purpose of claims fishing.  As a result, CalSTRS's Motion should not only be denied, but weighs in favor of granting NNI's appeal and rejecting CalSTRS's Section 1782 Application on the merits.

Finally, CalSTRS's brand new request for documents and transcripts from the separate securities litigation against NNAS pending in this district—mentioned for the first time in CalSTRS's proposed order to show cause and not even addressed in CalSTRS's brief—also must be denied.  As an initial matter, the request is not in CalSTRS's Subpoena or its Section 1782 Application and thus cannot be ordered.  It is simply not a part of these proceedings.  And, this brand new request is misdirected. NNI is not a party to the U.S. securities litigation and may not have access to the materials requested, which are confidential and subject to the restrictions of a discovery confidentiality order entered in that litigation.  But, even if this discovery request was both included in CalSTRS's Subpoena and properly directed at NNI, the request nonetheless would warrant rejection as an impermissible attempt at disfavored "cloned discovery."

## ARGUMENT

### I. CALSTRS HAS FAILED TO DEMONSTRATE ANY CHANGE IN CIRCUMSTANCE OR THREAT OF HARM SUFFICIENT TO WARRANT EMERGENT COURT INTERVENTION, STAY RELIEF, OR CIRCUMVENTION OF NNI'S APPEAL.

"Local Civil Rule 65.1 states in pertinent part that '[n]o order to show cause to bring on a matter for hearing will be granted except on a clear and specific showing by affidavit or verified pleading of good and sufficient reasons why a procedure other than by notice of motion is necessary.'" *Lavergne v. Bryson*, No. 11-7117 (PGS), 2011 WL 13192893, at *1 (D.N.J. Dec. 16, 2011) (alteration in original); *Floyd v. United States*, No. 15-6371 (JBS/KMW), 2015 WL 5090096, at *2 (D.N.J. Aug. 26, 2015) (declining to issue order to show cause where plaintiff failed to establish requisite bases for emergent relief under L. Civ. R. 65.1); *see also Diaz v. Muller*, No. 11-4029, 2011 U.S. Dist. LEXIS 78361, at *2 (D.N.J. July 18, 2011) ("Petitioner has supplied no . . . affidavit or verified pleading of good and sufficient reasons why a procedure other than by notice of motion is necessary.  Nor does the brief in support of the application for an order to show cause even address the question of what such reasons might be.").

Here, given the timing of CalSTRS's Motion and the current stage of the Danish Proceeding, this Court should not credit CalSTRS's assertions of need for emergent relief.  In any event, even if CalSTRS could articulate a basis justifying the urgency of this relief—which it has not and cannot—CalSTRS has failed to

demonstrate any threat of harm that would support this Court taking action on the Order to Show Cause.

**A.    CalSTRS's Unexplained Five-Week Delay in Filing Its Motion Itself Should Invalidate the Order to Show Cause.**

CalSTRS's Motion is based on an Order from the Court in Denmark denying CalSTRS's motion to stay those proceedings and setting a December 4, 2020 deadline for CalSTRS to file the actual complaint it plans to litigate there.  CalSTRS contends that, as a result, this Court must take the drastic step of requiring immediate compliance with CalSTRS's Subpoena, effectively nullifying NNI's appeal.  But, as the Danish Order itself demonstrates, it was issued ***on September 1, 2020***.  ECF No. 38-2 ¶ 5 & Ex. B.  In other words, CalSTRS seeks immediate, extremely prejudicial, Court intervention based on a purported change in circumstance that CalSTRS did absolutely nothing about for ***five weeks***.

That fact is itself fatal to CalSTRS's Motion.  CalSTRS's delay amounts to an admission that even CalSTRS does not believe the Order of the Court in Denmark requires action on an emergent basis.  As a matter of both law and equity, CalSTRS's procrastination should foreclose any possible opportunity to immediately nullify NNI's appellate rights and the appellate process more generally.  *See Westchester Fire Ins. Co. v. Global Real Construction, LLC*, No. 09-207 (JLL), 2009 WL 137414, at *2 (D.N.J. Jan. 20, 2009) ("Presently, the record is bare as to why this matter should not have proceeded according to a notice of motion; instead, the record

discloses a relatively leisurely pace to pretrial activity, with [the plaintiff] pausing more than one month between a request for collection on the bond and the issuance of the demand letter to Defendants, and then waiting in excess of another month prior to filing its Order to Show Cause."); *Pharmacia Corp. v. Alcon Labs.*, 201 F. Supp. 2d 335, 384 (D.N.J. 2002) (finding that a delay can "knock[] the bottom out of any claim of immediate and irreparable harm"); *Morgan v. Wal-Mart Stores, Inc.*, No. 14-4388 (MAS) (LHG), 2014 WL 12774918, at *2 (D.N.J. Dec. 12, 2014) (denying the applicant's Order to Show Cause, finding that the applicant's "lack of urgency, as reflected by the submission of his Application five months after the Complaint was filed and three weeks after the Court's Scheduling Order was entered, undermines his claim of immediate and irreparable harm"); *NASC Servs. Inc. v. Jervis*, No. 07-CV-5793 (DMC), 2008 WL 2115111, at *6 (D.N.J. May 19, 2008) (finding that the plaintiffs "belie[d] the notion that any harm . . . [wa]s 'imminent'" where they "delayed obtaining their 'emergency' order to show cause" for a month after the harm occurred and were further willing "to wait for the Court to set a hearing" for another month after obtaining the order to show cause); *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) ("[T]he 'failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury[.]'" (citation omitted)).

In light of CalSTRS's admission that emergent action is not actually required, and because this Court has already issued its stay Order over CalSTRS's objection (which is the subject of a fully briefed cross-appeal currently pending), CalSTRS's Motion should have been one for reconsideration based on a change in factual circumstance and proceeding on a normal motion cycle. Even had CalSTRS proceeded in that fashion, however, its Motion would lack merit. CalSTRS has failed to show any harm sufficient to warrant the relief it seeks or reconsideration of this Court's well-reasoned decision granting NNI's Motion for Stay Pending Appeal.

### B.   CalSTRS Has Failed to Demonstrate Harm Sufficient to Warrant the Relief it Seeks.

To warrant reconsideration, the movant must show "either (1) an intervening change in the controlling law; (2) the availability of new evidence that was not previously available when the court issued its order; or (3) the need to correct a 'clear error of law or prevent manifest injustice.'" *Legalize Marijuana Party v. New Jersey*, No. 14-6032 (JBS/AMD), 2014 WL 5410631, at *1 (D.N.J. Oct. 23, 2014) (quoting *Database Am., Inc. v. Bellsouth Adver. & Pub. Corp.,* 825 F. Supp. 1216, 1220 (D.N.J.1993)). Courts in this District have routinely denied reconsideration of prior findings where no change in circumstances exists. *See Taccetta v. Ricci*, No. 09-5508 (MLC), 2014 WL 940732, at *3 (D.N.J. Mar. 11, 2014) (finding "no change in circumstances or good cause to warrant reconsideration of its prior" opinion); *Castillo v. DeRosa*, No. 04-990 (FLW), 2007 WL 9798514, at *1 (D.N.J. Apr. 2,

2007) ("finding that Plaintiff has not satisfied L. CIV. R. 7.1(g) as he has failed to show a change in circumstances or law that the Court overlooked when initially denying Plaintiff's motion that would justify reconsideration"); *In re Imperial '400' Nat'l Inc.*, 374 F. Supp. 949, 955 (D.N.J. 1974) (finding no "facts that indicate such a change of circumstances as would warrant a total reconsideration" of the court's previous determination).

CalSTRS previously represented to this Court, and to the Court in Denmark, that it seeks discovery from NNI via Section 1782 not to determine what claims it has, but to "narrow" or "refine" claims already asserted and streamline the Danish Proceedings by limiting documentary evidence and testimony at trial. *See* ECF No. 8-1 ¶ 6 (sworn statement by CalSTRS's Danish counsel asserting that "[t]here is nothing preliminary" about the Writ filed in Denmark and that the Writ articulates "the claims" that CalSTRS "intend[s] to pursue in the Danish Action"); ECF No. 18-8 Ex. A at 1 (CalSTRS's stay application in Denmark asserting its intention to "use the documents discovered [pursuant to its Section 1782 Application] to narrow the issues of the case" and "limit the evidence significantly by withdrawing a number of witnesses and solely producing the key documents in the case"); ECF No. 38-2 Ex. B at 1 (Danish High Court memorializing CalSTRS's representation to it that CalSTRS intends to use Section 1782 discovery to "refine the claimants' arguments" and "limit the production of evidence to a significant extent, by reducing the number

9

of witnesses to be heard at trial and by submitting as evidence only the most central documents of the case.").

If those representations are accurate, then the stay pending appeal currently in place poses no threat of significant, let alone irreparable, harm to CalSTRS, and the Danish High Court's decision to refuse to stay those proceedings does not constitute a change in circumstance sufficient to support reconsideration of this Court's stay order.[1]  Under Danish procedural rules, discovery may be introduced up to four weeks before trial and, potentially, even later.  Supplemental Declaration of Henriette Gernaa ("Supp. Gernaa Decl.") ¶¶ 5-6. (discussing applicable Danish procedural rules).  Here, no date for trial has yet been set and trial is not expected to commence in 2021.  *Id.* ¶ 7.  As a result, the full and fair adjudication of NNI's appeal currently pending—and, if necessary, any subsequent appeal to the Third Circuit—poses no threat to CalSTRS's ability to use the discovery it seeks via Section 1782 (should CalSTRS prevail).  And, CalSTRS has still failed to make any attempt to seek discovery from NNAS—the actual litigant in front of the Danish Court—in the Danish Proceeding.  *Id.* ¶ 4.

---

[1] CalSTRS's prior representations that it has already articulated the claims it intends to litigate in Denmark and that it seeks Section 1782 discovery only to "narrow" or "refine" those claims also means that CalSTRS must already be in possession of a sufficient evidentiary basis to state its claims.  Otherwise, those claims were filed in bad faith.

The Court in Denmark already rejected the very same arguments that CalSTRS repurposes here.  Indeed, the Danish High Court determined that CalSTRS having to file its amended complaint in Denmark without any Section 1782 discovery does not pose a threat of harm to CalSTRS sufficient to warrant a stay of those proceedings.   As CalSTRS's own Motion papers demonstrate, when Denmark's High Court refused to stay the proceeding there and ordered CalSTRS to file its operative pleading by December 4, 2020—a deadline set "in consultation with" CalSTRS[2]—it did so fully aware that Section 1782 discovery here is currently stayed and might remain stayed through the deadline for CalSTRS's amended pleading.  ECF No. 38-2, Ex. B at 2 ("[T]he parties informed the High Court that . . . [NNI] has been granted a Motion to Stay the Discovery Order pending appeal, and that a ruling on the appeal is expected to be delivered within four to eight months, calculated from the filing of the appeal in June 2020.  Based on the preceding information, the High Court does not find a basis to grant the claimants' Motion to Stay.").

In other words, the Danish High Court has already found that CalSTRS will not be harmed by being made to amend its pleading without Section 1782 discovery.

---

[2] ECF No. 38-2, Ex. A at 5 (noting that parties cannot expect a postponement of scheduling deadlines, including the deadline of December 4, 2020 because, among other reasons, those deadlines were "set in consultation with the parties").

This Court should follow suit, not only because the ruling is sound, but also in light of applicable principles of comity and the deference this Court should afford rulings by the Danish High Court in the Danish Proceeding.  *See* ECF No. 27-1 at 32-34.  In this regard, CalSTRS's Motion amounts to yet another attempt to circumvent the authority of the Danish Courts that should not be permitted.

Finally, even if—as CalSTRS now seems to admit—the true purpose of its Section 1782 Application is to gain discovery that CalSTRS will use, ***not*** to "narrow" claims, but actually to determine what they are—an admission which, as discussed below, should cause this Court to reject CalSTRS's Section 1782 Application on the merits—CalSTRS has still failed to demonstrate a threat of irreparable harm.  Nowhere in CalSTRS's Motion does it contend that its pleading in Denmark will not be permitted further amendment, or that CalSTRS could not apply for such relief.  In fact, Danish procedural rules afford CalSTRS an opportunity to do exactly that.  Supp. Gernaa Decl. ¶ 6 (discussing opportunities under Danish procedural rules for "expand[ing] the claims or pleas").

## II.   CALSTRS HAS FAILED TO DEMONSTRATE THAT THIS COURT'S STAY ORDER SHOULD BE LIFTED AND GROSSLY MISCHARACTERIZES ITS BASES.

CalSTRS argues that the stay pending appeal ordered by this Court should be lifted because CalSTRS will be harmed if it does not receive the discovery it seeks in time to draft the actual claims it intends to litigate in Denmark.  This is essentially

the only argument advanced by CalSTRS as justification for lifting the stay.  As already discussed, the argument should be rejected because CalSTRS has failed to demonstrate that it will suffer immediate or irreparable harm if the stay remains in place.

CalSTRS's request should also be rejected because it is premised on a misleadingly reductive interpretation of this Court's stay order that fails to address three of the four factors considered by the Court in putting that stay in place.  This Court's Order granting NNI's Motion for Stay Pending Appeal was based on a careful evaluation of each of the factors set forth in *In re Revel AC, Inc.*, 802 F.3d 558, 565 (3d Cir. 2015).  *Revel* directs courts adjudicating stay motions to consider: (1) "whether the appellant has made a strong showing of likelihood of success on the merits;" (2) whether the appellant will "suffer irreparable injury absent a stay;" (3) whether a stay will "substantially harm other parties with an interest in the litigation; and (4) whether a stay is in the public interest."  *Id.*  The Court properly concluded that each of these factors weigh in favor of staying enforcement of CalSTRS's Subpoena pending NNI's appeal.

First, the Court correctly concluded that the likelihood-of-success factor weighs in favor of a stay, determining that there was more than a negligible chance that Judge Wolfson might conclude that Judge Arpert erred in his adjudication of CalSTRS's contested Section 1782 Application, even if a clear error standard of

review applies.[3]  *See* ECF No. 28 at 11-12 (with respect to the first *Revel* factor, the Court "concedes there is more than a negligible chance that the District Judge could find that the Court abused its discretion and erred").  CalSTRS does not even acknowledge this as a basis for the Court's Stay Order, let alone offer any argument as to why it does not continue to support the stay imposed.

Second, and directly contrary to CalSTRS's conclusory assertion in its current Motion, the Court correctly found that NNI would suffer irreparable harm absent a stay because the act of disclosure would effectively moot any meaningful right to appeal.  *See* ECF No. 28 at 12 (with respect to second *Revel* factor, finding that NNI "could suffer irreparable harm if, on appeal, this Court's decision is overturned, and [NNI] has already produced the information to CalSTRS").  This conclusion is in line with the weight of authority that NNI cited in support of its stay motion—and that CalSTRS still cannot meaningfully refute—that the act of production causes irreparable harm because the receiving party can never unlearn what has been disclosed and the producing party can never be returned to its pre-disclosure position.  *See* ECF No. 21-1 at 10-11 (citing cases from the Third Circuit, this District, and elsewhere, for proposition that production is a "discrete, one-time,"

---

[3] As NNI has explained, Judge Arpert's Orders granting CalSTRS's Section 1782 Application, directing compliance with its underlying Subpoena and denying NNI's Motion for Reconsideration are properly reviewed *de novo* as opposed to a clear error standard of review.  *See* ECF No. 27-1 at 9-11; ECF No. 33 at 6-7.

irreversible act that causes irreparable harm if inappropriately ordered because the attorney receiving the discovery can never "unlearn what has been disclosed" and the producing party can never be returned "to its pre-disclosure position"); ECF No. 26 at 3-5 (collecting cases for proposition that the act of producing documents in response to an erroneously issued order constitutes irreparable harm irrespective of whether the documents contain sensitive or privileged information). As with the likelihood-of-success factor, CalSTRS fails to meaningful address in its Motion this Court's conclusion that NNI would suffer irreparable harm if it is forced to respond to CalSTRS's subpoena before NNI's appeal can be fully adjudicated.

Notably, NNI also demonstrated that NNAS would suffer irreparable harm by virtue of NNI's production because it would deprive NNAS of its right under Danish law to object to and potentially prevent such third-party productions. ECF No. 21-1 at 10. *Revel* makes clear that harm to NNAS was a proper consideration on the stay application. *Revel*, 802 F.3d at 565 (identifying harm to other parties with an interest in the litigation as a separate factor relevant to stay motions). This showing also goes unaddressed in CalSTRS's Motion.

Third, the Court also found that both the public interest and judicial economy favor the stay it imposed. *See* ECF No. 28 at 12-13. As with likelihood of success on appeal and irreparable harm to NNI and NNAS, these points simply go unaddressed in CalSTRS's Motion.

15

Thus, of the four *Revel* factors, each of which was found by this Court to support the stay order it issued, CalSTRS's Motion meaningfully addresses only one—harm to parties other than the appellant.  And, as to that one factor, CalSTRS addresses the Court's reasoning only in part.  Although the Court weighed that factor in NNI's favor because CalSTRS itself sought to stay the Danish Proceeding pending resolution of its Section 1782 Application and any appeals thereof, ECF No. 28 at 12, the Court also cited in support of its conclusion the fact that CalSTRS had never before complained of any delay despite this matter having been pending since October 2019.  *Id.*  This is yet another finding in support of the stay pending appeal that goes unaddressed in CalSTRS's Motion.

In any event, because CalSTRS will not sustain significant, let alone irreparable, harm if the stay remains in place, each *Revel* factor continues to weigh in favor of the stay pending appeal currently in place and CalSTRS's attempt to lift it should be denied as a result.

## III. CALSTRS HAS NOW ADMITTED THAT ITS SECTION 1782 APPLICATION WAS FILED FOR AN IMPROPER PURPOSE.

CalSTRS's Motion evidences an alarming shift in position concerning one of the central arguments NNI had and continues to advance in opposing CalSTRS's underlying Section 1782 Application.  As NNI has explained, Section 1782 Applications should not be permitted where the applicant seeks discovery not to support existing claims but to determine what claims it might have in the first

16

instance.  *See* ECF No. 18 at 13-19, 22; ECF No. 27-1 at 17-20; ECF No. 33 at 17-20.  In opposing CalSTRS's Section 1782 Application, NNI argued, among other things, that such claims fishing is the true purpose of CalSTRS's Application and that it should be rejected on that basis.  *Id.*  NNI pointed to CalSTRS's admission, contained in the very Writ filed by CalSTRS to initiate the Danish Proceeding, that it is merely a "provisional" placeholder filed for the purpose of tolling a statute of limitations period that does not attempt to articulate CalSTRS's actual claims.  *Id.*; ECF No. 1-10 at 2 (describing Writ as "provisional" and asserting that "[t]he facts of the case will be detailed in a future pleading, noting that the present writ was submitted to interrupt the limitation period.").  As NNI further explained, that admission, combined with CalSTRS's attempts to stay the Danish Proceeding pending resolution of its Section 1782 Application, the fact that the discovery it seeks via Section 1782 should be in NNAS's possession, and CalSTRS's failure to even attempt to seek that discovery from NNAS in Denmark in the first instance, demonstrates that CalSTRS seeks to circumvent Danish discovery restrictions and gain via Section 1782 discovery it will use to determine what claims it might have.  *See* ECF No. 18 at 13-19; ECF No. 27-1 at 11-32; ECF No. 33 at 8-29.

    As noted above, in opposing NNI's arguments, CalSTRS represented to this Court, and to the Court in Denmark, that it is attempting to use Section 1782 not to determine what claims it might have, but to "narrow" its already articulated claims

and streamline trial proceedings in Denmark.  But now, in this Motion, CalSTRS not only admits that it plans to use the discovery it seeks via Section 1782 to actually articulate its operative, as-yet-unfiled complaint, but argues that it will suffer irreparable harm if it cannot have the Section 1782 discovery for that purpose.  In light of this admission, CalSTRS's current Motion should not only be denied, but supports rejection of CalSTRS's Section 1782 Application as having been filed for an improper purpose.[4]  NNI respectfully requests that the Court consider the assertions CalSTRS has made in this Motion in adjudicating NNI's appeal.

## IV.  CALSTRS'S NEW REQUEST FOR DISCOVERY FROM A SEPARATE LITIGATION CANNOT AND SHOULD NOT ISSUE.

CalSTRS seeks an Order from this Court requiring production of something that was not and is not part of its Section 1782 Application: documents and transcripts from a separate litigation pending in this district captioned *In re Novo*

---

[4] CalSTRS notes in its Motion Judge Arpert's conclusion that CalSTRS using Section 1782 to gain discovery to amend its complaint in the Danish Proceeding is not improper.  Although Judge Arpert did reach that conclusion, he also acknowledged that there is a "fine line between properly seeking discovery before a proceeding is pending, or very close to the outset, and engaging in fishing expeditions."  ECF No. 20 at 16.  And, Judge Arpert did not conclude that CalSTRS would suffer harm, let alone irreparable harm, or that CalSTRS's Section 1782 Application would be rendered a nullity if CalSTRS were required to file an amended complaint in the Danish Proceeding without the benefit of the Section 1782 discovery it seeks.  In addition, as discussed, in granting NNI's Motion for Stay Pending Appeal, Judge Arpert acknowledged that it might reasonably be found on appeal that he erred in his analysis, even under a clear error standard.  *See* ECF No. 28 at 11-12.

*Nordisk Sec. Litig*., 17-cv-209 (D.N.J.) ("U.S. Securities Litigation").  As an initial matter, the requested Order should not issue because CalSTRS's Subpoena does not include a request for it; the request was not before Judge Arpert in the original papers presented.  ECF No. 1-1 (Subpoena advanced by CalSTRS under Section 1782). The Subpoena does not contain any request for discovery from the U.S. Securities Litigation or from any other litigation.  Rather, the Subpoena requests various categories of communications between NNI and NNAS.  *Id.*  CalSTRS's new request has never been addressed by the parties or the Court in any motion practice over the propriety of CalSTRS's Section 1782 Application.  CalSTRS does not even include any arguments *in its instant brief* as to why such a request should be shoehorned into these proceeding—it simply challenges NNI to show cause why this brand-new demand is unwarranted here.   But the request is simply not a part of these proceedings in any respect, and the Court should ignore it for that reason alone.

Second, NNI is not a party to the U.S. Securities Litigation.  Rather, the corporate defendant in that case is NNAS, and thus the documents CalSTRS demands are not properly within the scope of this action.  They are also confidential and protected from disclosure by a discovery confidentiality order entered in the U.S. Securities Litigation.  As a result, an order in this proceeding could not bind the party that would have authority to produce the requested materials.  *See Maniscalco v. Brother Int'l Corp. (USA)*, Nos. 3:06-CV-04907(FLW), 3:07-CV-01905(FLW),

2010 WL 762194, at *3 (D.N.J. Mar. 5, 2010) (finding that the "Plaintiffs had failed to satisfy their burden of proving that [the defendant] had control over documents which were in the physical possession of its Japanese corporate parent"); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 145-46 (D. Del. 2005) (holding that a non-party domestic subsidiary corporation was not obligated to obtain documents from its foreign parent corporation in response to a subpoena served on the non-party subsidiary); *Playboy Entm't Grp., Inc. v. United States*, No. 96-94-JFF, 1997 WL 873550, at *3-4 (D. Del. Dec. 11, 1997) (denying the defendants' motion to compel the plaintiff to produce documents in the possession of its parent company due to defendants' failure to demonstrate a sufficiently close connection between the two companies to show the requisite "control" under Fed. R. Civ. P. 34).

Finally, even were NNAS a party to this proceeding, and even had CalSTRS's request for discovery from the U.S. Securities Litigation actually been included in its Section 1782 Application (neither of which are true), CalSTRS's discovery request should nonetheless be rejected as an impermissible attempt by CalSTRS at cloned discovery.

Demands for "cloned" or "piggyback" discovery of the type CalSTRS attempts to interpose for the first time in this Motion are routinely rejected in this district and elsewhere. *See Eisai Inc. v. Sanofi-Aventis U.S., LLC*, No. 08-4168

(MLC), 2011 WL 5416334, at *8-9 (D.N.J. Nov. 7, 2011) (denying request for cloned discovery because such discovery was irrelevant, unlikely to lead to the discovery of admissible evidence, and unduly burdensome); *see also Racing Optics v. Aevoe Corp.*, No. 2:15-cv-1774-RCJ-VCF, 2016 WL 4059358, at *1 (D. Nev. July 28, 2016) ("'Piggyback' discovery requests are prohibited. [Plaintiff] 'must specifically ask for the documents he wants and be able to demonstrate that the information he seeks is relevant to his claims in this case.'" (citation omitted)); *King Cty. v. Merrill Lynch & Co.*, No. C10-1156-RSM, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011) ("[C]loned discovery . . . is irrelevant and immaterial unless the fact that particular documents were produced or received by a party is relevant to the subject matter of the subject case."); *Midwest Gas Servs., Inc. v. Ind. Gas Co.*, No. IP99-0690-C-Y/G, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000) (denying motion to compel cloned discovery and noting that "plaintiffs' counsel must do their own work and request the information they seek directly").

This is true even where the claims or factual underpinnings of the proceeding from which discovery is sought and the proceeding for which it is requested overlap. In *Midwest Gas*, the plaintiffs alleged the defendant violated federal and state antitrust laws, but its request for all discovery the defendant produced to the DOJ in a government investigation involving the same subject matter was nonetheless denied. *Id.* at *1-2. In a similar situation, the Court in *King County* explained,

"[a]lthough some portion of documents encompassed by [the p]laintiffs' request may be relevant, the Court has no method of determining which of those documents are relevant, and which are not[,]" and emphasized that though the documents produced to the government may be relevant, the proper approach is through specific discovery requests.  2011 WL 3438491, at *3.

*Chen v. Ampco System Parking*, No. 08-CV-0422-BEN (JMA), 2009 WL 2496729, at *1 (S.D. Cal. Aug. 14, 2009) is also instructive.  There, plaintiffs in a collective action in federal court sought to compel discovery of, among other things, documents produced by the defendant in four similar state court actions.  The court denied the request, finding that "similarities are not enough to require a *carte blanche* production of all documents from the state cases."  *Id.* at *2.  Similarly, in *Oklahoma v. Tyson Foods, Inc.*, No. 05-CV-329-TCK-SAJ, 2006 WL 2862216, at *1 (N.D. Okla. Oct. 4, 2006), the court denied a request for documents and materials produced by the defendants in a similar law suit, finding that although some of the documents may be relevant, the plaintiffs did "not sufficiently articulate[] the relevance of the documents sought."  *Id.* at *3.  That court, like the court in *Chen,* explained that a showing of "some surface similarities" is not sufficient to require "*carte blanche*" production of all documents produced in a different case.  *Id.* at *1.

This Court should reach the same result here.  CalSTRS's hopelessly vague allegations in its admittedly "provisional" Writ in the Danish Proceeding cannot

22

possibly support an order for production of unspecified discovery from a U.S. securities litigation commenced by a 295-paragraph complaint that withstood a motion to dismiss.  The Writ and the complaint in the U.S. Securities Litigation are not comparable.  And, the cases are venued in different countries, involve different parties, concern different claims and are subject to entirely different laws, discovery rules and procedures.

## CONCLUSION

For these reasons, CalSTRS's Motion to Compel by Order to Show Cause seeking an Order lifting the stay pending appeal issued by this Court, directing immediate compliance with CalSTRS's Subpoena, and directing production by NNI of documents and transcripts from the separate litigation captioned *In re Novo Nordisk Sec. Litig.*, 17-cv-209 (D.N.J.), should be denied.


Dated: October 16, 2020
Newark, New Jersey

s/ Michael R. Griffinger
Michael R. Griffinger, Esq.
Samuel I. Portnoy, Esq.
Charlotte Howells, Esq.
Genna A. Conti, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500

*Attorneys for Novo Nordisk, Inc.*