Michael R. Griffinger, Esq.
Samuel I. Portnoy, Esq.
Charlotte Howells, Esq.
Genna A. Conti, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500

*Attorneys for Novo Nordisk, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: APPLICATION OF CALIFORNIA STATE TEACHERS RETIREMENT SYSTEM FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING | Civil Action No. 19-16458 (FLW) (DEA)<br><br>**NOTICE OF APPEAL** |

**NOTICE** is hereby given that Defendant Novo Nordisk, Inc., by and through its counsel, Gibbons P.C., hereby appeals, pursuant to Rule 3 of the Federal Rules of Appellate Procedure, to the United States Court of Appeals for the Third Circuit from the District Court's October 29, 2020 Opinion and Order, ECF Nos. 42 & 43, affirming the Magistrate Judge's September 20, 2019 and May 13, 2020 orders granting California State Teachers Retirement System's ("CalSTRS") *ex parte* application for leave to obtain discovery for use in a foreign proceeding pursuant to 28 U.S.C. § 1782, directing compliance with CalSTRS's

underlying subpoena, and denying NNI's motion for reconsideration or, alternatively, to quash the subpoena pursuant to Fed. R. Civ. P. 45(d)(3).

Dated: November 2, 2020
Newark, New Jersey

s/ Michael R. Griffinger
Michael R. Griffinger, Esq.
Samuel I. Portnoy, Esq.
Charlotte Howells, Esq.
Genna A. Conti, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500

*Attorneys for Novo Nordisk, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| CALIFORNIA STATE TEACHERS RETIREMENT SYSTEM,<br><br>Petitioner,<br><br>v.<br><br>NOVO NORDISK, INC.,<br><br>Respondent. | : | Civil Action No. 19-16458 (FLW) (DEA)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

This matter comes before the Court upon Novo US Novo Nordisk, Inc.'s ("Novo US") appeal of the Magistrate Judge's Orders granting Petitioner California State Teachers' Retirement System's ("CalSTRS") *ex parte* application for leave to obtain discovery for use in a foreign proceeding pursuant to 28 U.S.C. § 1782, and denying Novo US's Motion for Reconsideration or, alternatively, to quash the subpoena pursuant to Fed. R. Civ. P. 45(d)(3).[1] For the reasons set forth below, the Magistrate Judge's Orders are **AFFIRMED**.

## I. BACKGROUND AND PROCEDURAL HISTORY

On August 2, 2019, CalSTRS and other investors filed a Writ of Summons in the Glostrup District Court in Denmark (the "Danish Proceeding") against Novo US's parent company, Novo Nordisk A/S ("NNAS"), headquartered in Denmark. (ECF No. 1-10, at 1–2.) In the Writ of Summons (the "Writ"), which is a provisional pleading, CalSTRS alleges that NNAS misled

[1] CalSTRS has also filed a cross-appeal of the Magistrate Judge's Order granting a stay of the subpoena pending this appeal. Because the Court affirms the Magistrate Judge's decision granting CalSTRS's § 1782 application, CalSTRS cross-appeal of the stay is moot. As set forth *infra*, the Court will require Novo US to provide the requested discovery forthwith.

investors as to the pricing for its insulin drug products and the continued prospects for its products in the United States.[2] (*Id.* at 2–5.) Specifically, the Writ alleges that NNAS misled investors by disseminating false information regarding NNAS's "significant turnover expectations, growth in operating profit, and that the actual and projected sales growth in the Novo market in the United States was a result of [NNAS's] unique innovation and product-specific qualities." (*Id.* at 2.) However, the Writ claims that NNAS's economic growth was actually "the result of a scheme where [NNAS] increasingly paid higher rebates to [Pharmacy Benefit Managers ("PBMs")] to gain access to their Formulary and thus access to the United States market for prescription insulin medicine products."[3] (*Id.* at 2–3.) The Writ further alleges that NNAS failed to disclose the PBM scheme and that prices of pharmaceuticals in the United States were under pressure "ma[king] it difficult for manufacturers to increase the list price of insulin medicinal products." (*Id.* at 3.) According to the Writ, NNAS's competitors acknowledged these issues, whereas NNAS maintained that its "innovation and product-specific qualities guaranteed preferential prices even in the challenged market and protected [its] earnings and growth from negative consequences." (*Id.*) Despite NNAS's obligation to report the correct information, the Writ alleges that NNAS did not disclose these market factors during the relevant period of February 3, 2015 through February 2, 2017, and once it did properly disclose the information, its stock price dropped significantly. (*Id.* at 3–4.)

---

[2] A related securities class action is currently pending in this District, which relates to NNAS's American Depository Receipts ("ADRs"), and arises from the same set of facts as the Danish Proceeding. *See In re Novo Nordisk Securities Litig.*, No. 17-209 (D.N.J.).

[3] According to the Writ, PBMs negotiate the pricing and other conditions for prescription-only medicinal products on behalf of insurance companies and pharmacies with pharmaceutical manufacturers. (ECF No. 1-10, at 2.) Additionally, PBMs are responsible for determining what products are registered in the "Formulary," which recommends what pharmaceutical products are sold to consumers in the United States' prescription market. (*Id.*)

On August 7, 2019, CalSTRS filed an *ex parte* application for foreign discovery pursuant to § 1782 in an effort to gather evidence for the Danish Proceeding (the "Application"). (ECF No. 1.) CalSTRS specifically seeks documents from Novo US concerning communications with NNAS senior executives as to conditions in the United States insulin market and internal United States sales and profit projections for NNAS insulin products. (ECF No. 1-3, at 4; *see also* ECF No. No. 1-1.) As Novo US is a Delaware corporation with headquarters in Plainsboro, New Jersey, the Application specifically seeks a subpoena requiring Novo US to produce the following categories of documents:

> 1. All Documents concerning or reflecting all communications between [Novo US] and [NNAS] with respect to sales and revenue targets and/or projections for insulin-based drugs including NovoLog®, Levemir®, and Tresiba® in the United States during the Relevant Time Period,[4] including without limitation all communications and internal documents concerning the impact of rebates or other payments made to pharmacy benefit managers.
>
> 2. All Documents concerning or reflecting all communications between [Novo US] and [NNAS] with respect to prices and/or pricing of insulin-based drugs including NovoLog®, Levemir®, and Tresiba® in the United States during the Relevant Time Period, including without limitation obtaining or maintaining premium pricing for Tresiba® in the United States.
>
> 3. All Documents concerning or reflecting all communications between [Novo US] and [NNAS] with respect to actual sales of insulin-based drugs, including NovoLog®, Levemir®, and Tresiba®, in the United States during the Relevant Time Period.
>
> 4. All Documents concerning or reflecting all communications between [Novo US] and [NNAS] with respect to the impact of payments to pharmacy benefits managers on the prices in the United States for insulin-based drugs including NovoLog®, Levemir®, and Tresiba® during the Relevant Time Period.

---

[4] The Subpoena defines the "Relevant Time Period" as February 3, 2015 through March 1, 2017. (ECF No. 1-1, at 2.)

> 5. All Documents concerning or reflecting all communications between [Novo US] and [NNAS] about the efficacy, safety, and/or quality of insulin-based drugs including NovoLog®, Levemir®, and Tresiba® during the Relevant Time Period, including in comparison to Competitors' insulin-based drugs, and including all reports, analyses, recommendations, projections and/or estimates.
>
> 6. All Documents concerning or reflecting all communications between [Novo US] and [NNAS] in preparation of financial analyses and/or projections for any public statements made by Novo Nordisk A/S during the Relevant Time Period including, without limitation annual reports, quarterly earnings reports, earnings calls, analyst calls, special calls, shareholder calls and analyst/investor days.

(ECF No. 1-1, at 1–2.)

On August 21, 2019, Novo US submitted a letter to the Magistrate Judge, in which it asserted that the Application was premature as the Writ filed in the Danish Proceeding was merely a provisional filing, and that until a formal complaint is filed, there is insufficient information to reliably evaluate the Application under § 1782. (ECF No. 7.) On August 26, 2019, CalSTRS responded to Novo US's August 21 letter, arguing that the Application is not premature and meets the requirements of § 1782(a). (ECF No. 8.) Novo US sent a second letter on August 28, 2019, stating that its August 21 Letter was not a formal opposition to the Application, and again, argued that the Application was prematurely filed.[5] (ECF No. 9.)

---

[5] In the August 21 Letter, Novo US additionally reserved its "right to challenge the Application on the merits" and to challenge the subpoena pursuant to the Federal Rules of Civil Procedure. (ECF No 7, at 1 n.1.) In that connection, Novo US argues in its appeal that the Magistrate Judge erred in construing its August 21 and August 28 Letters as its formal opposition to CalSTRS's § 1782 application. (Novo US App. Br., at 36.) However, Novo US fails to cite to either the Federal Rules of Civil Procedure or the District of New Jersey Local Rules proving a right to file a formal opposition to the *ex parte* application. Rather, as the Magistrate Judge correctly explained, Novo US is fully entitled to file a motion to modify or quash the subpoena once it has been served. I find no error in the Magistrate Judge's consideration of Novo US's letters. *See In re Mota*, No. 19-369, 2020 WL 95493, at *1 (D. Del. Jan. 8, 2020) (observing that "[d]iscovery applications under § 1782 are often granted *ex parte* because, *inter alia*, witnesses and other recipients can 'raise[] objections and [otherwise] exercise[] their due process rights by

Case 3:19-cv-16458-FLW-DEA Document 45 Filed 11/02/20 Page 7 of 27 PageID: 8430

On September 20, 2019, the Magistrate Judge issued a Memorandum Order granting CalSTRS's *ex parte* application. (*See* ECF No. 13.) Specifically, the Magistrate Judge found that CalSTRS met all three requirements under § 1782: (1) Novo US is a party found in this District, (2) the discovery request is "for use" in a foreign tribunal, and (3) CalSTRS is an interested party in the Danish Proceeding. (*Id.* at 9–10.) Further, the Magistrate Judge determined that the factors set forth by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2000), weighed in favor of granting CalSTRS's discovery request. (*Id.* at 10.)

On October 4, 2019, Novo US moved for reconsideration of the Magistrate Judge's Order or, alternatively, to quash the subpoena. (ECF No. 19.) In arguing that the Magistrate Judge should reconsider his Order, Novo US contends that the Court improperly construed its August 21 letter as a formal opposition to CalSTRS's § 1782 application. (ECF No. 18-1, at 8.) In that connection, Novo US argues that the application should not have been granted because it does not satisfy the § 1782 statutory requirements and the *Intel* factors weigh against granting the application. (*See id.*) On May 13, 2020, the Magistrate Judge issued a detailed 21-page Memorandum Order finding that Novo US had not presented any proper ground for reconsideration of the September 20, 2019 Order, nor had it shown that CalSTRS's subpoena presents an undue burden. (*See* ECF No. 20.) Shortly thereafter, on May 22, 2020, Novo US filed a motion to stay the September 20, 2019 Order pending appeal of the Magistrate Judge's decision. (ECF No. 21.) The Magistrate Judge granted the motion to stay on June 19, 2020. (ECF No. 28.) This appeal followed.[6]

---

motions to quash'"). In any event, Novo US indeed moved to quash the Subpoena before the Magistrate Judge.

6 While this appeal was pending, CalSTRS, on October 7, 2020, requested the Magistrate Judge issue an Order to Show Cause, requiring Novo US to show cause as to why the stay pending

## II. DISCUSSION

### a. Standard of Review

At the outset, the parties dispute the standard under which the Court reviews the Magistrate Judge's decision. The Federal Magistrates Act "authorizes district court judges to refer nondispositive and dispositive motions to magistrate judges." *EEOC v. City of Long Branch*, 866 F.3d 93, 98 (3d Cir. 2017); *see also* 28 U.S.C. § 636. The standard of review of a Magistrate Judge's decision is determined based on whether the ruling is dispositive or nondispositive. *See id.* at 99–100. If a ruling is nondispositive, a district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). In that regard, district courts "review findings of fact for clear error and . . . matters of law *de novo*." *City of Long Branch*, 866 F.3d at 99. If a ruling is dispositive, the magistrate judge issues a report and recommendation, subject to review by the district judge under a *de novo* standard. *See* Fed. R. Civ. P. 72(b)(1), (3).

Novo US contends that the Magistrate Judge's Order granting the Application for foreign discovery is dispositive because the Magistrate Judge's Order disposes of the entire case.[7] (Novo

---

appeal should not be lifted. (ECF No. 38.) In its request, CalSTRS avers that it will be irreparably prejudiced if the stay is not lifted as the Danish High Court issued an Order denying its application for a stay of the Danish Proceeding and compelling CalSTRS to file its amended statement of claim by December 4, 2020. (*See* ECF No. 38-1.) On October 16, 2020, Novo US filed a response to the Order to Show Cause arguing that the stay should not be lifted. (*See* ECF No. 39.) Because the Court affirms the Magistrate Judge's Order granting CalSTRS's § 1782 application, the order to show cause is moot.

[7] In support of its position that a *de novo* standard of review applies here, Novo US relies on *In re Application for Discovery for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, No. 17-4269, 2019 WL 168828 (D.N.J. Jan. 10, 2019). In that case, the Magistrate Judge's decision was styled as a report and recommendation and the parties assumed the applicable standard of review was *de novo*. *Id.* at *4. Accordingly, out of an abundance of caution, the court reviewed the Magistrate Judge's decision *de novo* without resolving the question of whether decisions on discovery applications under § 1782 are dispositive. *See id.*

US App. Br., at 10–11.) While the Third Circuit has not determined whether § 1782 motions for discovery are dispositive in nature, a majority of out-of-district decisions "have found that such rulings are *not* dispositive and therefore subject to review only for clear error." *In re Hulley Enterprises Ltd.*, 400 F. Supp. 3d 62, 71 (S.D.N.Y. 2019); *see, e.g.*, *In re Application of Quadre Investments, L.P.*, No. 18-118, 2019 WL 1075274 (C.D. Cal. Jan. 7, 2019) ("[T]he 'majority of . . . courts to address the issue, both in and out of the Ninth Circuit' have concluded that 'a § 1782 application is a non-dispositive matter subject to review for clear error under 28 U.S.C. § 636(b)(1)(A) and [Fed. R. Civ. P.] 72(a).'" (second and third alterations in original)); *JSC MCC EuroChem v. Chauhan*, No. 17-00005, 2018 WL 3872197, at *1 (M.D. Tenn. Aug. 15, 2018) ("The majority of persuasive authority on this topic concludes that a magistrate judge's ruling on a motion for discovery under 28 U.S.C. § 1782(a) is nondispositive."); *In re Judicial Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank, Ltd.*, No. 14-797, 2015 WL 3439103, at *2–3 (D. Nev. May 28, 2015) (finding § 1782 nondispositive and applying clear error standard).

I agree with those courts that have addressed this issue. Indeed, a ruling by a magistrate judge "is dispositive if a decision on the motion would effectively determine a claim or defense of a party." *City of Long Branch*, 866 F.3d at 99. While resolution of a § 1782 application does, practically speaking, "terminate a matter before a U.S. court, it does not dispose of the underlying claims or defenses pending in the foreign or international tribune." *In re Hulley*, 400 F. Supp. 3d at 71. Rather, an application under § 1782 is quintessentially akin to an application for discovery which "is procedural in nature and does not address substantive issues." *In re Judicial Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank, Ltd.*, 2015 WL 3439103, at *3; *see also City of Long Branch*, 866 F.3d at 98 (noting that a discovery motion is nondispositive). Accordingly, it

is appropriate to apply the clearly erroneous standard when reviewing a Magistrate Judge's decision on a § 1782 application.

A decision is clearly erroneous "when, although there may be some evidence to support it, the reviewing court, after considering the entirety of the evidence, is 'left with the definite and firm conviction that a mistake has been committed.'" *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008) (quoting *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J. 1990)). A decision is contrary to law when it misinterprets or misapplies the law. *Id.*

**b. Whether the Magistrate Judge Erred in Granting the Application**

Section 1782 provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. . . . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a). Congress intended for § 1782 to be applied liberally and "district courts should treat relevant discovery materials sought pursuant to § 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify the denial of the application." *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998). However, while section 1782 was enacted to "facilitate the conduct of litigation in foreign tribunals, improve international cooperation in litigation, and put the United States into the leadership position among world nations," *In re Bayer AG*, 146 F.3d at 191–92, "these goals do not in turn mean that a party in foreign litigation is entitled

to unbridled and unlimited discovery under the statute." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).

In evaluating a discovery application pursuant to § 1782, the court must first determine whether the statutory requirements are met, "and if those requirements are satisfied, the Court may then consider other factors to determine whether to exercise its discretion to grant the application." *In re O'Keefe*, 646 F. App'x 263, 265–66 (3d Cir. 2016). The statutory requirements for foreign discovery under § 1782 are:

> (1) The person from whom discovery is sought resides in the district; (2) the request seeks the "testimony or statement" of a person or the production of a "document or thing;" (2) the discovery is for use in proceedings before a foreign or international tribunal; and (4) the application is made by either a "foreign or international tribunal" or by an "interested party."

*In re O'Keefe*, 646 F. App'x at 265 n.4. Once it is determined that § 1782's statutory requirements are met, the court must weigh the discretionary factors set forth by the Supreme Court in *Intel*. *See O'Keefe*, 646 F. App'x at 266. The *Intel* factors require a court to consider:

> (1) whether the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States; [and] (4) whether the subpoena contains unduly instructive or burdensome requests.

*Id.* (citing *Intel*, 541 U.S. at 264–65).

#### *i.* ***Consideration of Danish Discovery Rules***

Before addressing whether the Magistrate Judge properly granted the Application, the Court considers Novo US's argument that the Application should not have been granted because

Case 3:19-cv-16458-FLW-DEA Document 24 Filed 10/29/20 Page 10 of 23 PageID: 808

CalSTRS is not entitled to the discovery under Danish law.[8] Specifically, Novo US contends that the parties do not dispute that Danish law does not permit the discovery of documents and other evidence "for a general, investigative gathering of evidence."[9] (*See* ECF No. 1-11, ¶ 8; ECF No. 18-9, ¶ 12.) In that connection, Novo US argues that the Application should not have been granted because it exceeds the bounds of Danish law.

In his Memorandum Order denying Novo US's motion for reconsideration, the Magistrate Judge declined "to provide a detailed analysis of Danish discovery rules as courts have warned against attempts to interpret foreign legal rules and systems, especially when undergoing a § 1782 analysis." (ECF No. 20, at 19.) The Magistrate Judge's decision in this regard was not in error. The Third Circuit in *In re Bayer, AG*, held "that imposing a requirement that the materials sought [by a § 1782 application] be discoverable in the foreign jurisdiction would be inconsistent with both the letter and spirit of the statute." 146 F.3d at 193. Indeed, the *Bayer* court explained that "[i]f Congress had intended to impose an additional element as restrictive as a requirement that the materials be discoverable in the foreign jurisdiction, it would have done so explicitly." *Id.* The Supreme Court has further instructed that § 1782(a) determinations should not be limited based on foreign discovery rules. *See Intel*, 542 U.S. at 260 ("[N]othing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there."); *see also Brandi-Dohrn v. IKB Deutsche Idustriebank AG*,

---

[8] It is unclear from Novo US's opening brief whether this argument is intended to address the application of the "for use" requirement of section 1782(a) or the Application generally. However, in its reply brief, Novo US clarifies that this argument is not solely directed toward the second statutory factor, but "is offered as a fundamental proposition striking at the very heart and integrity of [CalSTRS'] Application." (Novo US Reply Br., at 19–20.) The Court, accordingly, considers this argument separately from the section 1782(a) statutory considerations.

[9] The parties do not dispute that CalSTRS would not be able to obtain the documents requested from Novo US under Danish law.

673 F.3d 76, 82 (2d Cir. 2012) ("[A] district court should not consider the discoverability of the evidence in the foreign proceeding . . . [or] the admissibility of evidence in the foreign proceeding in ruling on a section 1782 application." (emphasis removed)). Accordingly, I decline to vacate the Magistrate Judge's decision on the grounds that the Application permits discovery that would not be permitted under Danish law.[10]

***ii. Statutory Requirements***

The Magistrate Judge determined that each of the section 1782(a) statutory requirements was met here. Specifically, the Magistrate Judge found that there was no dispute that Novo US is headquartered in New Jersey; that the discovery is "for use" in the Danish Proceeding as it intended to "add more details on which to base [CalSTRS's] Complaint" and aid "in evaluating the potential merits of its claims"; and that CalSTRS, as a litigant in the Danish Proceeding, is an interested party in that action. (ECF No. 13, at 9–10.) On appeal, Novo US argues that the Magistrate Judge erred in finding that the requested discovery is "for use" in a foreign proceeding because, it argues, section 1782 applications should not be granted to support "pre-suit claims discovery." (Novo US App. Br., at 24–25.) In that regard, Novo US maintains that the Application is nothing more than an improper fishing expedition. (*Id.* at 25–26.)

Generally, "[f]ederal courts interpret the 'for use' phrase liberally." *In re the Application of Sauren Fonds-Select SICAV*, No. 16-133, 2016 WL 6304438, at *3 (D.N.J. Oct. 26, 2016). In

---

10 Novo US further argues that United States law prohibits the discovery CalSTRS seeks because the Writ filed in the Danish Proceeding does not satisfy the pleading standards of the Federal Rules of Civil Procedure nor the exacting pleading standards under the Private Securities Litigation Reform Act, which would apply if the same claims were filed in the United States. This argument plainly lacks merit. It appears Novo US did not make any effort to substantiate this argument, as Novo US fails to cite to any case law to support its position. In fact, the Supreme Court has roundly rejected the suggestion "that a § 1782(a) applicant must show that United States law would allow discovery in domestic litigation analogous to the foreign proceeding." *Intel*, 542 U.S. at 263.

that regard, a discovery request will generally meet the "for use" requirement where the discovery sought is "something that will be employed with some advantage or serve some use in the proceeding." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015). Moreover, to meet the "for use" requirement, there need not be a pending foreign adjudicative action. *See Intel*, 542 U.S. at 259. Rather, the Supreme Court only requires that "a dispositive ruling . . . be within reasonable contemplation." *Id.* "'Reasonable contemplation' requires some showing of 'objective indicium' and a 'concrete basis' that a contemplated action will proceed." *In re JSC United Chemical Co. Uralchem*, No. 20-3651, 2020 WL 4251476, at *4 (D.N.J. July 24, 2020) (quoting *Certain Funds, Accountants and/or Inv. Vehicles v. KPMG, LLP*, 798 F.3d 113, 123–24 (2d Cir. 2015)).

I find that the Magistrate Judge's finding that the discovery sought in the Application is "for use" in the Danish Proceeding was not clearly erroneous. First, Novo US contends that the discovery sought is not "for use" because CALSTRS "has filed only a temporary provisional pleading that . . . does not articulate its actual claims." (Novo US App. Br., at 17.) However, as the Magistrate Judge properly determined, a foreign proceeding need not be pending to meet the "for use" requirement so long as it is "within reasonable contemplation." (ECF No. 20, at 16.) Here, CalSTRS and other plaintiffs have filed a Writ of Summons in the Danish Proceeding that sets forth the factual basis for its claims against NNAS in a provisional pleading that was "submitted to interrupt the limitation period." (*See* ECF No. 1-10, at 2.) This is sufficient to meet the "for use" requirement because the Writ provides objective indicia that the Danish Proceeding will proceed to formal litigation in the Danish courts. And, indeed, the Danish High Court has ordered CalSTRS to file its formal complaint by December 4, 2020.

The Court finds the circumstances of this case similar to *Mees*, in which the Second Circuit found that the petitioner met the "for use" requirement where she sought discovery pursuant to §

Case 3:19-cv-16458-FLW-DEA Document 42 Filed 10/29/20 Page 15 of 27 PageID: 851

1782(a) to properly plead, and eventually prove, a defamation claim in the Netherlands courts. *See Mees*, 793 F.3d at 299–301. The *Mees* court determined that the "for use" requirement was met by petitioner's "showing that the materials she seeks are to be used at some stage of a foreign proceeding that was within reasonable contemplation at the time of the proceedings below." *Id.* at 301. Here, the fact that CalSTRS only filed a provisional pleading does not vitiate that the materials it seeks are clearly intended to be used at some stage of the Danish Action. The filing of that provisional pleading further demonstrates that the Danish Action is in "reasonable contemplation."

Finally, Novo US argues that even if the Application satisfies the "for use" requirement, it should not be granted as it is an impermissible pre-suit fishing expedition. (Novo US App. Br., at 18–20.) On this issue, the Magistrate Judge carefully considered CalSTRS's Application, explaining that

> The Court appreciates the sometimes fine line between properly seeking discovery before a proceeding is pending, or very close to the outset, and engaging in fishing expeditions. In the Court's discretion to liberally construe what materials may be "for use" in a foreign proceeding, the Court did not ignore controlling law. The Court considered the stated, intended use of the requested discovery to aid CalSTRS in amending its Complaint in the Group Action and determined that such use is not improper.

(ECF No. 20, at 16–17.) There is no doubt that the Court must scrutinize section 1782(a) applications to prevent misuse of the statute and has the discretion to deny such an application where it is merely a fishing expedition. *See, e.g.*, *In re Asia Maritime Pacific, Ltd.*, 253 F. Supp. 3d 701, 705–08 (S.D.N.Y. 2015) (denying § 1782(a) application where it constituted an "overly broad fishing expedition" that did not relate to any "reasonably contemplated" foreign proceeding). However, here, the discovery sought by CalSTRS is related to the claims set forth in the Writ filed in the Danish Proceeding. Indeed, as set forth *infra*, in the Court's discussion of the fourth *Intel*

factor, each request in the Subpoena relates directly to allegations in the Writ. As CalSTRS's requests clearly relate to allegations asserted in the Danish Proceeding and are intended for use in that proceeding, both to amend the Writ and later use to prove CalSTRS's claims, I agree with the Magistrate Judge that the Subpoena is not a fishing expedition. For these reasons, I find that the Magistrate Judge did not clearly err in finding that the § 1782 statutory requirements were satisfied.

**iii. *The Intel Factors***

Having found that the Magistrate Judge properly determined that the § 1782 statutory requirements were met, the Court must assess whether the Magistrate Judge clearly erred in finding that the *Intel* factors weighed in favor of granting the Application. Novo US specifically challenges the Magistrate Judge's findings on the first, third, and fourth *Intel* factors.[11]

**1. *First Intel Factor***

The first *Intel* factor considers whether the discovery sought is within the "jurisdictional reach" of the foreign tribunal. *Intel*, 542 U.S. at 247. In other words, this factor asks whether the discovery is accessible without the aid of § 1782. *Kulzer v. Esschem*, 390 F. App'x 88, 91 (3d Cir. 2010).

In finding that this factor weighed in favor of discovery, the Magistrate Judge explained that because Novo US is a Delaware corporation with its headquarters in New Jersey, "the Danish tribunals do not have the power to compel Novo US to produce the discovery sought." (ECF No. 13, at 10.) Further, in denying Novo US's motion for reconsideration, the Magistrate Judge

---

[11] The second *Intel* factor asks whether the nature or character of the foreign tribunal and proceeding indicate that the foreign government may not be receptive to U.S. discovery. *Intel*, 542 U.S. at 264. The Magistrate Judge found that "[n]either party . . . presented any information that would indicate that the Danish Court is not receptive to discovery obtained in the United States." (ECF No. 13, at 10.) Neither Novo US nor CalSTRS addresses this factor in its briefing and, therefore, the Court will not disturb the Magistrate Judge's finding. The second *Intel* factor, therefore, weighs in favor of discovery.

Case 3:19-cv-16458-FLW-DEA Document 24 Filed 10/29/20 Page 15 of 23 PageID: 853

rejected Novo US's argument that because CalSTRS seeks evidence of communications between Novo US and NNAS, the communications could be easily sought from NNAS in the Danish Proceeding. (ECF No. 20, at 18–19.) On that issue, the Magistrate Judge explained that CalSTRS seeks "all documents *relating* to any such communication" and that NNAS "may not be in possession of all of Novo US's documents that relate to its communication with [NNAS]." (*Id.* at 19.)

On appeal, Novo US again argues that because the Subpoena seeks communications between it and NNAS, CalSTRS can obtain the information from NNAS, as any communications between Novo US and NNAS must be in NNAS's possession in the reach of the Danish court. (Novo US App. Br., at 22.) However, Novo US plainly misreads the Subpoena. CalSTRS expressly requests "[a]ll Documents *concerning or reflecting all communications* between" Novo US and NNAS for each category of information. (ECF No. 1-1, at 1–2.) Such a request may very well include documents that are internal to Novo US and, therefore, out of reach of the Danish courts.

Importantly, the mere possibility that some documents may be obtainable in the foreign jurisdiction does not, in and of itself, negate any need for assistance under section 1782. For example, in *In re Cal. Teachers' Ret. Sys.*, No. 16-4251, 2017 WL 1246349, at *2 (D.N.J. Apr. 3, 2017), the petitioner sought discovery for use in a foreign proceeding against Volkswagen AG from the Volkswagen Group of America, which "marketed and sold vehicles with defeat devices in the U.S." Specifically, the petitioner there sought "documents that show Volkswagen AG's communications with [Volkswagen Group of America]." *Id.* The court found unconvincing Volkswagen Group of America's argument that "because some of the documents sought might exist in Germany," they are "within the foreign jurisdiction's reach." *Id.* at *3. Specifically, the

court rejected the argument because there was no evidence presented that showed the documents were actually located in Germany and, further, because the documents were not accessible through German discovery. *Id.* Similarly here, Novo US's argument that some of the documents requested may be within the reach of the Danish courts is based purely on speculation. Novo US presents no evidence that NNAS actually has possession of the documents targeted by the Subpoena.

Furthermore, Novo US contends that the Magistrate Judge "erred by failing to give due consideration to CalSTRS's refusal to even attempt to obtain discovery from NNAS in Denmark before seeking discovery" from Novo US.[12] As the Magistrate Judge correctly determined, however, there is no requirement "that an applicant must seek discovery relief in a foreign forum first." (ECF No. 20, at 18 (quoting *In re O'Keefe*, 646 F. App'x at 268).) Rather, "the district court need not, but '*may*, in its discretion, properly consider a party's failure first to attempt discovery measures in the foreign jurisdiction.'" *In re Application for Discovery in Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, 2019 WL 168828, at *11 (emphasis added) (quoting *In re Babcock Borsig AG*, 583 F. Supp. 3d 233, 241 (D. Mass. 2008)). While Novo US may disagree

[12] In support of this argument, Novo US relies on the Second Circuit's decision in *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79 (2d Cir. 2004). There, petitioners had brought a civil action in Germany against Deutsche Telekom AG ("DT") and filed a § 1782 application seeking discovery from DT's American lawyers for documents that had been disclosed in a similar class action lawsuit filed in the United States. *Id.* at 81. The Second Circuit observed that the first *Intel* factor weighed against discovery because, while the respondent in the § 1782(a) action was DT's lawyers, "for all intents and purposes petitioners are seeking discovery from DT." *Id.* at 85. Because DT is subject to the jurisdiction of the German courts, "petitioner[s'] need for § 1782 help 'is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.'" *Id.* (quoting *Intel*, 542 U.S. at 244). Novo US suggests that the "Second Circuit stressed the [petitioners'] failure to even attempt to seek discovery in the first instance from DT in Germany," in affirming the denial of the § 1782 petition. (Novo US App. Br., at 24.) However, that is a misreading of the case. Rather, the Second Circuit highlighted that the documents petitioners sought were in the possession of DT and should have been obtained, if at all, through German discovery processes. *See Schmitz*, 376 F.3d at 85. In contrast, here, CalSTRS's request seeks materials that are internal to Novo US and, therefore, are unlikely to be in the possession of NNAS. Thus, the Court does not find *Schmitz* counsels against granting discovery in this action.

with the Magistrate Judge's decision in this regard, the Magistrate Judge was not obligated to deny CalSTRS's Application simply because CalSTRS did not first seek the discovery in question from the Danish courts. *See In re Application of Kate O'Keefe for Assistance Before a Foreign Tribunal*, No. 14-5835, 2015 WL 5039723, at *3 (D.N.J. Aug. 26, 2015) ("Though a court *may* consider [evidence that a petitioner did not seek discovery in the foreign tribunal] in making its discretionary finding, there is no requirement that a court *must* do so."), *aff'd*, 646 F. App'x 263 (3d Cir. 2016). Rather, the Magistrate Judge had the discretion to do so and declined to exercise that discretion. That decision was not clearly erroneous.

Accordingly, the Court finds that the Magistrate Judge properly weighed the first *Intel* factor in favor of granting the Application.

**2. *Third Intel Factor***

Novo US next challenges the Magistrate Judge's finding that the third *Intel* factor weighs in favor of discovery. The third *Intel* factor considers "whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. While "[t]he court must consider whether the litigant's motives are tainted by a surreptitious effort to bypass foreign discovery rules; . . . that consideration cannot serve as the sole determining factor because the statute does not reference a requirement of discoverability under the foreign country's laws." *Kulzer v. Esschem, Inc.*, 390 F. App'x 88, 92 (3d Cir. 2010).

On this factor, the Magistrate Judge found that CalSTRS "is not trying to circumvent the discovery limits of Danish tribunals." (ECF No. 13, at 10.) The Magistrate Judge explained:

> Novo US argues that the third factor cannot be evaluated because it is unclear which court the litigation will proceed, so the Application is premature. The Court does not agree. The Court should refrain from evaluating the laws and procedures of a foreign legal system

Case 3:19-cv-16458-FLW-DEA Document 24 Filed 10/29/20 Page 20 of 27 PageID: 856

> in determining whether a party is attempting to circumvent the limits of discovery in a foreign legal system. Even if the Court was concerned about the fact that the precise venue is unknown, the discovery procedure does not vary between the Golstrup District Court, Eastern High Court, and Maritime and Commercial Court.

(*Id.*) The Magistrate Judge reiterated this finding on Novo US's motion for reconsideration. In its motion for reconsideration, Novo US asserted that "the Danish court would disapprove of the quantity of documents sought because discovery is much more limited and pointed in Denmark." (ECF No. 20, at 19.) The Magistrate Judge, however, highlighted that "the fact that a foreign tribunal has a more limited discovery scope does not itself prove that a party is attempting to circumvent the foreign tribunal's limitations," and declined to "provide a detailed analysis of Danish discovery rules." (*Id.*)

I do not find any error with the Magistrate Judge's findings on this factor. Novo US argues that the Magistrate Judge failed to evaluate CalSTRS conduct in the foreign forum, *i.e.*, whether it attempted to secure the discovery sought in the foreign jurisdiction before filing its section 1782 application. (Novo US App. Br., at 25–26.) Again, there is no requirement under § 1782(a) that a petitioner previously attempted to obtain the discovery sought in the foreign jurisdiction before filing its § 1782 application. *See In re O'Keefe*, 646 F. App'x at 268; *In re Application for an Order Permitting Metallgesellschaft AG to Take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) ("[W]e have held that a district court may not refuse a request for discovery pursuant to § 1782 because a foreign tribunal has not yet had the opportunity to consider the discovery request."); *In re Cal. State Teachers' Ret. Sys.*, 2017 WL 1246349, at *3 (finding "Appellant's suggestion that CalSTRS bypassed German law by not first requesting discovery in Germany is unpersuasive"). Nor was the Magistrate Judge required to consider such a failure in evaluating this factor. *See In re Application of Kate O'Keefe for Assistance Before a Foreign Tribunal*, 2015 WL 5039723, at *3.

Case 3:19-cv-16458-FLW-DEA Document 42 Filed 10/29/20 Page 19 of 23 PageID: 857

Novo US additionally takes issue with the fact that the discovery sought by CalSTRS would not be available under Danish or U.S. law. (Novo US App. Br., at 27.) However, "[a] party cannot show circumvention of foreign proof-gathering rules simply by showing that the foreign jurisdiction does not allow for [such] discovery." *In re Cal. State Teachers' Ret. Sys.*, 2017 WL 1246349, at *3 n.3; *see also In re Chevron Corp.*, 633 F.3d 153, 163 (3d Cir. 2011) (observing that "there is no requirement that the material be discoverable in the foreign country for it to be discoverable pursuant to a section 1782 request in the United States").

Putting those two issues aside, the Court is left with Novo US's contention that the timing of the Application demonstrates an attempt to circumvent Danish discovery procedure. Specifically, Novo US highlights that CalSTRS filed the Application shortly after filing the Writ in Danish court and, thereafter, sought to stay the Danish Proceeding while obtaining discovery in this Court. The timing of the Application, in and of itself, does not demonstrate an attempt to circumvent Danish discovery limitations. Indeed, district courts regularly grant pre-suit discovery where litigants would not be entitled to similar discovery in the foreign tribunal. *See, e.g.*, *In re Cal. State Teachers' Ret. Sys.*, 2017 WL 1246349, at *3 (finding that petitioner was not attempting to circumvent Germany's restrictive discovery rules by filing a § 1782 application one month after filing civil action in German court).

For these reasons, I find that the Magistrate Judge did not clearly err in finding that the third *Intel* factor weighs in favor of granting the Application.

### 3. ***Fourth Intel Factor***

Finally, Novo US contends that the Magistrate Judge erred in weighing the fourth *Intel* factor in favor of discovery. The fourth *Intel* factor considers whether the discovery request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. As the Third Circuit has explained,

"[s]ection 1782 expressly incorporates the Federal Rules of Civil Procedure and the fourth factor aligns with Rules 26 and 45." *In re Ex Parte Global Energy Horizons Corp.*, 647 F. App'x 83, 85–86 (3d Cir. 2016). In that regard, "assessment of the fourth factor is virtually identical to the familiar 'overly burdensome' analysis that is integral to the Federal Rules." *Id.* at 86. Courts should, accordingly, allow only discovery "that is relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), and does not impose an undue burden or expense on the responding party, Fed. R. Civ. P. 45(d)(1).

The Magistrate Judge determined that the discovery sought by CalSTRS "does not impose an undue burden and . . . is not overly intrusive" as "[Novo US] is likely to produce the same information requested by [CalSTRS] in the ADR Class Action occurring in this District."[13] (ECF No. 13, at 10–11.) In his Memorandum Order denying Novo US's motion for reconsideration, the Magistrate Judge further observed that Novo US

> blanketly states the Subpoena presents an undue burden and is not proportionate to the needs of the case without explaining any specific burden. Simply listing the topics of communication and stating that the request is directed to three different products is insufficient to demonstrate an undue burden on the fourth *Intel* factor or need to quash the Subpoena. The Court reiterates its previous findings that the discovery sought is not unduly burdensome or overly intrusive.

---

[13] In his Order granting the Application, the Magistrate Judge mistakenly stated that Novo US concedes that they are likely to produce similar materials in the ADR Class Action. (ECF No. 13, at 6.) In his Order on Novo US's motion for reconsideration, however, the Magistrate Judge acknowledged that Novo US did not concede CalSTRS's argument regarding discovery in the ADR Class Action. (ECF No. 20, at 10.) Novo US suggests that, based on the Magistrate Judge's correction, his finding that the fourth *Intel* factor supports granting the Application cannot stand because "he failed to explain why the correction did not alter the viability of his analysis or ultimate conclusion." (Novo US App. Br., at 31 n.8.) However, the Magistrate Judge's acknowledgment that Novo US did not concede this point does not undermine his finding that Novo US is likely to produce similar materials in the ADR Class Action. Such finding is supported by the record, which demonstrates that the Danish Proceeding and ADR Class Action are based on the same facts and plaintiffs in both matters will likely require similar documents to prove their claims.

Case 3:19-cv-16458-FLW-DEA Document 24 Filed 10/29/20 Page 21 of 23 PageID: 859

(ECF No. 20, at 19–20.)

On appeal, Novo US again contends that the Application is a fishing expedition and that this alone requires a finding that the fourth *Intel* factor weighs against CalSTRS's Application. (Novo US App. Br., at 29.) The Application is neither a fishing expedition nor is it overly broad. Novo US asserts that the Application is overly broad as it seeks multiple topics of communications related to three insulin products and is sufficiently general to "target[] nearly every aspect of NNAS and NNI's business." (*Id.* at 31.) Novo US further argues that the Magistrate Judge could not have properly determined whether these requests are proportional to CalSTRS's needs because "CalSTRS has not yet articulated its actual claims." (*Id.*)

Once again, the allegations asserted in the Writ filed in the Danish Proceeding undermine Novo US's position. While Novo US contends that CalSTRS has not articulated its claims, the Writ sets forth sufficient allegations to determine the proportionality of CalSTRS request. The Writ alleges that NNAS misled investors regarding pricing for its insulin drugs and the prospects of those products in the United States. (ECF No. 1-10, at 2–3.) In that regard, the Application seeks the production of documents related to Novo US and NNAS's communications regarding certain insulin products and public statements made by NNAS. (*See* ECF No. 1-1.) Novo US's objections to the Writ simply restate the information sought by the Subpoena without explaining *why* the Subpoena is overbroad or lacks proportionality.

Indeed, each category of document requested in the Subpoena relates to the allegations set forth in the Writ. CalSTRS's first request for documents concerning or reflecting communications between Novo US and NNAS with respect to sales and revenue topics for three insulin-based drugs, NovoLog®, Levemir®, and Tresiba® (the "insulin-based drugs"), including communications regarding the impact of rebates and payments made to PBMs, directly relates to

Case 3:19-cv-16458-FLW-DEA Document 42 Filed 10/29/20 Page 22 of 23 PageID: 850

the Writ's allegation that NNAS engaged in a scheme in which it paid higher rebates to PBMs in order to access their Formulary. (*See* ECF No. 1-1, at 4; ECF No. 1-10, at 2–3.) Similarly related to this allegation is CalSTRS's fourth request, which seeks documents regarding "the impact of payments to [PBMs] on the prices in the United States" for the insulin-based drugs. (ECF No. 1-1, at 4–5.) Next, in its second and fifth requests, respectively, CalSTRS seeks documents regarding the pricing of the insulin-based drugs, including premium pricing for Tresiba® in the United States, and concerning "the efficacy, safety, and/or quality of" the insulin-based drugs, "including in comparison to Competitors' insulin-based drugs." (*Id.*) These requests relate to the Writ's allegation that NNAS misled investors by insisting that its "innovation and product-specific qualities guaranteed preferential prices" in the United States. (ECF No. 1-10, at 3.) CalSTRS's third request for documents concerning communications regarding the actual sales of the insulin-based drugs, relates to the allegations that NNAS issued false statements regarding its price formation for those drugs. (*See* ECF No. 1-1, at 4; ECF No. 1-10, at 4–5.) Finally, CalSTRS's sixth request seeks documents reflecting communications made "in preparation of financial analyses and/or projections for any public statements" made by NNAS, which directly relates to the Writ's claim that NNAS knew that the information it reported to the market was false. (ECF No. 1-1, at 5; ECF No. 1-10, at 4–5.) Moreover, each of the requests is tailored to the Relevant Time Period, *i.e.*, February 3, 2015 through March 1, 2017, which corresponds to the Relevant Period of the Writ, February 3, 2015 through February 2, 2017. (*See* ECF No. 1-1, at 5; ECF No. 1-10, at 2.)

Having reviewed the Subpoena and the Writ together, I cannot find that the Magistrate Judge's decision was in error. CalSTRS's requests are proportional to the needs of its case and directly relate to the allegations set forth in the Writ. Nor do I find that the Subpoena imposes an

undue burden on Novo US. Novo US fails to explain how the Subpoena will place an undue burden on it. Indeed, its only argument on this issue is that CalSTRS should be required to first request these documents from NNAS before seeking discovery from Novo US. However, as the Court already found, the Subpoena seeks documents internal to Novo US that could not be obtained from NNAS. Moreover, I find the Magistrate Judge's observation that Novo US will likely have to produce similar documents in the ADR Class Action correct. For these reasons, I find that the Magistrate Judge did not err in finding that the fourth *Intel* factor weighs in favor of granting the Application.

In sum, the Magistrate Judge did not clearly err in finding that the Intel factors weigh in favor of granting CalSTRS's application under § 1782.

**V. CONCLUSION**

For the foregoing reasons, the Magistrate Judge's Orders are **AFFIRMED**. Novo US is directed to comply with the Subpoena in accordance with the Federal Rules of Civil Procedure and the Rules of this Court. An appropriate Order accompanies this Opinion.

DATED: October 29, 2020

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CALIFORNIA STATE TEACHERS RETIREMENT SYSTEM, Petitioner, v. NOVO NORDISK, INC., Respondent. | Civil Action No. 19-16458 (FLW) (DEA) **ORDER** |

**THIS MATTER** having been opened to the Court by Michael Griffinger, Esq., counsel for Respondent Novo Nordisk, Inc. ("Novo US"), on an appeal of the Magistrate Judge's Orders, dated September 20, 2019 and May 13, 2020, granting Petitioner California State Teachers Retirement System's ("CalSTRS") *ex parte* application for leave to obtain discovery for use in a foreign proceeding pursuant to 28 U.S.C. § 1782, and denying Novo US's Motion for Reconsideration or, alternatively, to quash the subpoena pursuant to Fed. R. Civ. P. 45(d)(3); it appearing that CalSTRS, through its counsel, N. Ari Weisbrot, Esq., opposes the appeal and has filed a cross-appeal of the Magistrate Judge's June 22, 2020 Order staying enforcement of the September 20, 2019 Order pending appeal; the Court having reviewed the parties' submissions in connection with the appeal, for the reasons set forth in the Opinion also filed on this date, and for good cause shown,

**IT IS** on the 29th day of October, 2020,

**ORDERED** that Novo US's appeal of the Magistrate Judge's Orders dated September 20, 2019 and May 13, 2020 is **DENIED**; and it is further

**ORDERED** that CalSTRS's cross-appeal of the Magistrate Judge's Order dated June 22, 2020 is **DENIED** as moot; and it is further

**ORDERED** that the Magistrate Judge's Orders granting CalSTRS's *ex parte* application for leave to obtain discovery for use in a foreign proceeding pursuant to 28 U.S.C. § 1782 and denying Novo US's Motion for Reconsideration or, alternatively, to quash the subpoena are **AFFIRMED**; and it is further

**ORDERED** that Novo US is directed to comply with the Subpoena without delay, in accordance with the Federal Rules of Civil Procedure and the Rules of this Court.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge