

Michael R. Griffinger
Director

Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
Direct: 973-596-4701 Fax: 973-639-6294
mgriffinger@gibbonslaw.com

January 19, 2021

**VIA ECF**

The Honorable Freda L. Wolfson, U.S.D.J.
United States District Court
Clarkson S. Fisher Building and U.S. Courthouse
402 East State Street, Courtroom 5E
Trenton, New Jersey 08608

> Re:   In re: Application of California State Teachers' Retirement System for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave To Obtain Discovery for Use in a Foreign Proceeding, No. 3:19-16458 (FLW) (DEA)

Your Honor:

This law firm represents Novo Nordisk, Inc. ("NNI") in the above-referenced matter. We write in response to the January 15, 2021 status letter[1] filed by counsel for California State Teachers Retirement System ("CalSTRS"). ECF No. 60.

NNI has now fully complied with CalTSRS's subpoena and the Orders of this Court. It has produced in response to CalSTRS's six document requests approximately ***330,000 documents*** spanning nearly ***800,000 pages***, along with associated metadata. NNI made that production two days after the Third Circuit's stay of this Court's production order was lifted—as quickly as was technologically feasible. According to CalSTRS's own counsel, the production is "much larger than anticipated." Exhibit A. In preparing the production, NNI was mindful of this Court's comment that responsive documents should include not only communications between NNI and Novo Nordisk A/S ("NNAS"), but also documents "concerning" or "reflecting" those communications. NNI produced documents from over 40 custodians from both NNI and NNAS, including, among other things, materials relating to committees with transatlantic membership and processes involving coordination between NNAS and NNI.

While NNI worked to finalize this sizable production and get it into CalSTRS's hands, CalSTRS, for the first time in the history of these proceedings, made demands and inquiries regarding the manner by which the documents would be processed and formatted. Although most of CalSTRS's questions could be resolved by an actual review of the production—which CalSTRS acknowledges it has not done—and NNI arguably was not obligated to provide such information in any event, it endeavored to do so. NNI provided CalSTRS with a written ESI protocol setting

---

[1] NNI believes it would have been more efficient for the parties to have filed a joint status submission articulating each side's respective position on any issues in dispute. CalSTRS, however, did not alert us that they intended to file a status letter, nor gave us an opportunity to review that letter prior to filing. While NNI is reluctant to burden the Court with a separate submission, we are compelled to correct and clarify the record on a number of points.

GIBBONS P.C.

The Honorable Freda L. Wolfson, U.S.D.J.
January 19, 2021
Page 2

out in detail precisely how the documents were formatted and processed for production—which meets industry standards and tracks the specifications followed in *In re Novo Nordisk Sec. Litig.*, No. 17-209 (D.N.J.) ("U.S. Securities Litigation"), provided a written explanation for each field of metadata, and answered a host of other questions on issues that include deduplication, encryption, privilege, translation, etc. Exhibit A. CalSTRS responded to these efforts with baseless accusations of "obfuscation" and threats of sanctions, which are as puzzling as they are unfortunate. *Id.*

On the issue of deposition transcripts and exhibits from the U.S. Securities Litigation, as NNI has previously explained, they are neither requested in nor responsive to CalSTRS's subpoena. *See* ECF No. 60 at pp. 7-8 (subpoena requests). CalSTRS's contention that NNI has never taken this position is simply untrue. NNI has repeatedly asserted, in correspondence with CalSTRS and submissions to the Court, that those deposition transcripts are not responsive to CalSTRS's subpoena and that a request for them would be objectionable had CalSTRS included one. *See e.g.,* Exhibit A; ECF No. 40 at 18-23.

Even CalSTRS acknowledges that it made no mention of deposition transcripts until after Judge Arpert's determinations regarding the propriety and scope of CalSTRS's subpoena were already on appeal. CalSTRS filed a motion to compel by order to show cause attaching a proposed order that sought, for the first time, to expand CalSTRS's subpoena to include those materials, despite the fact that the subpoena does not seek them. NNI opposed the effort, arguing both that the materials are not called for by CalSTRS's subpoena and also that the topic had never before been addressed by the parties or the Court. ECF No. 40 at 18-19. NNI also argued that the request would be objectionable had it been included in CalSTRS's subpoena because: (i) NNI, the target of the subpoena, is not a party to the U.S. Securities Litigation and so would not be the proper subject of a production order for the materials, which are protected from disclosure by separate DCOs, *id.* at 19-20; and (ii) the request constitutes an impermissible attempt at "cloned discovery" routinely rejected in this district and elsewhere, *id.* at 20-23 (citing cases).[2]

As CalSTRS acknowledges, this Court has never issued the order for deposition transcripts that CalSTRS requested, which makes sense, given that the subpoena does not even seek them.[3] Moreover, it is one thing to subpoena business documents in a non-party's possession that may be relevant to claims articulated by the propounding party. It is quite another to subpoena confidential

---

[2] Also puzzling is CalSTRS's assertion that NNI has taken the position that deposition transcripts are not "documents." NNI has never made that argument. NNI can only assume that CalSTRS is attempting to set it up as a straw man.

[3] Nor was this CalSTRS's only effort to expand the scope of it subpoena after the fact. In a second motion to compel, CalSTRS again asked the Court to order NNI to produce deposition transcripts from the U.S. Securities Litigation. ECF No. 56-1 at 9, 11. In a tacit rejection of both attempts, this Court did not issue any order directing production of those materials.

GIBBONS P.C.

The Honorable Freda L. Wolfson, U.S.D.J.
January 19, 2021
Page 3

deposition transcripts from a litigation to which the subpoena target is not even a party, venued in a different country involving different claims subject to entirely different laws, discovery rules and procedures.

Instead, this Court ordered NNI to produce documents responsive to CalSTRS's subpoena, which is precisely what NNI has done, to the tune of approximately 330,000 documents produced in response to a subpoena containing six requests.

In sum, NNI is in full compliance with CalSTRS's subpoena and the Orders of this Court, and has exceeded any obligations it might have had to respond to CalSTRS's various questions and demands regarding document processing and format.  As NNI previously argued both to CalSTRS and the Court, the deposition materials CalSTRS seeks (before even reviewing the 330,000 documents already produced), are simply not responsive to its subpoena and a request for them would be objectionable had it been included.  Although CalSTRS has not actually requested in its status letter that this Court issue any production order, if the Court is inclined to regard CalSTRS's status letter as a request for such relief, NNI opposes it and requests an opportunity to formally brief the issue.

Thank you for Your Honor's kind attention.  Please do not hesitate to have the Court's staff contact me with any questions or if I may be of any service to the Court whatsoever.

        Respectfully submitted,

        s/ Michael R. Griffinger

        Michael R. Griffinger

cc: All Counsel of Record (via ECF)

# EXHIBIT A

**From:** Portnoy, Samuel I. <SPortnoy@gibbonslaw.com>
**Sent:** Wednesday, January 13, 2021 4:56 PM
**To:** Ari Weisbrot <aweisbrot@weisbrotlaw.com>; Irwin Schwartz <ischwartz@blaschwartz.com>
**Cc:** Griffinger, Michael R. <MGriffinger@gibbonslaw.com>
**Subject:** RE: CalSTRS - Novo Nordisk; Meet and Confer Request

Ari,

I am at a loss as to how you can contend that we are attempting to "obfuscate" or that any of our conduct is even potentially sanctionable.  As you know, the Third Circuit stayed the District Court's production order pending resolution of NNI's FRAP 8 application for emergent review of the denial of NNI's motion for stay pending appeal.  When the Third Circuit denied that application last week, NNI made its production in response to CalSTRS's subpoena as immediately as was technologically feasible:  The Third Circuit denied NNI's FRAP 8 Application on Wednesday, January 6 and NNI made its production--**consisting of approximately 330,000 documents and associated metadata**—two (2) days later, on Friday, January 8.  As your co-counsel notes below, you have not even finished processing the production, let alone begun a substantive review.  And, until last week, CalSTRS never once raised any questions or concerns regarding the manner in which NNI intended to gather, process, and produce responsive documents, even after NNI noted in filings with the district court and Third Circuit that process was underway.  To the precise contrary, CalSTRS made repeated motions seeking production of responsive documents within timeframes that would not even allow for such negotiations or discussions (e.g., 7 days).  In fact, your co-counsel in the email below recognizes that if CalSTRS had processing/formatting concerns, it should have raised them long before now.  Nor does a non-party like NNI have any obligation to comply with a requesting party's formatting or processing demands.  Regardless, here, NNI went above and beyond its obligations, providing CalSTRS with a written ESI protocol detailing precisely how documents were processed and formatted for production.  I also asked whether you would prefer NNI to hold off producing documents to allow for negotiations or revisions to that protocol. You declined, and directed us to produce.  Which we did—immediately.  Before you had even accessed the production, you sent me a list of processing/formatting questions.  Some have already been answered. And because most (if not all) of the balance can be answered through a review of the production and associated metadata—which you now have but have not yet reviewed—I made the reasonable suggestion that you review the production and come back to us if any questions still remain.  Yesterday's email, seeking an explanation of each field of metadata associated with the documents, was answered the same day, making today's allegations of "obfuscation" and threats of sanctions particularly puzzling.  The email from your co-counsel below seems to bear out the reasonableness of the approach I had suggested (and to completely undermine your assertion of sanctionable conduct).  That email confirms NNI's production:

- "has been successfully downloaded" and its "integrity . . . appears good"
- "is very large" and "much larger than expected"
-  is only in the very early stages of processing/technical review for problems or issues (let alone a substantive review)
- "appears normal and should demonstrate minimal  . . . issues"

It is also unclear from the below emails which questions have been answered (or your co-counsel expects its review will answer) and which they would like answered before they actually review the production.  The only issues specifically identified in your co-counsel's more recent email are how our vendor handled "encryption" and "redaction."  Although I believe a review of the documents and

associated metadata would also resolve these questions, once again, in the spirit of transparency and cooperation, I provide the following responses:

On encryption, our vendor confirms that all encrypted/password protected documents have been unlocked where possible. Where not possible, that has been noted.

On redactions, as noted in my email to you yesterday explaining the various fields of metadata, there is a field that will inform you whether a document has been redacted. Documents requiring redaction (if any) were not withheld in their entirety. Rather, redactions (if any) were applied to the image of the document (or natively within a spreadsheet), with the basis for the redaction identified, and the extracted text for the document was updated to reflect the redaction. For items such as pasted photographs in emails, jpgs, etc., they will be viewable in the image of the document, but will not be included in the extracted text.

On the deduplication question (which is not specifically mentioned in your co-counsel's more recent email), I can confirm that the vendor followed the procedure outlined in the ESI protocol (which I believe is what your co-counsel asked be confirmed).

On the issue of a privilege log (also not referenced in the more recent email), we are prepared to produce a log in relatively short order. But, we believe it would be burdensome and inefficient to prepare a log if CalSTRS intends to dispute whether NNI has fully complied with the subpoena and presses for more documents (potentially requiring preparation of additional or revised logs). To be clear, we believe NNI has fully complied with CalSTRS's subpoena. If CalSTRS agrees, we are happy to prepare and provide a log. If CalSTRS intends to dispute the sufficiency of the response and seek production of additional materials, we think it makes sense to wait until those disputes are resolved and provide a complete log thereafter.

On the issue of Danish documents (also not referenced in the more recent email), I can confirm that efforts to locate and produce responsive documents included a search of both English and Danish documents. However, I would note that NNI does business in English including and so I would expect the vast majority (and potentially all) of the responsive documents will be in English.

I hope this resolves your co-counsel's current inquiries. If there are additional questions, I will be happy to provide what information I can, but I would again suggest that the far more reasonable and efficient way to proceed is for you to actually review the production we made (which your co-counsel confirms has not yet been done) and then compile a list of the questions that remain (if any).

On the issue of deposition transcripts from the Securities Class Action pending in DNJ, they are simply not requested in CalSTRS's subpoena and the district court has never ordered their production or suggested in an opinion that they are responsive. If you believe there is such an order, please identify it and I would be happy to review and consider it. Although CalSTRS submitted a *proposed* order to the district court that would have specifically directed the production of those transcripts, the district court did not sign that order. Rather, the district court has only ever ordered NNI to produce documents responsive to CalSTRS's subpoena, which is precisely what NNI has done (erring on the side of overinclusion), to the tune of some 330,000 documents. Even your co-counsel states that NNI's production is "much larger than anticipated." And, as previously communicated, a request for deposition transcripts would be objectionable if it had been included in CalSTRS's subpoena; NNI is the target of this subpoena, but is not a party to the separate litigation from which the deposition

transcripts are sought, and the request constitutes an impermissible attempt at cloned discovery disfavored in this district.

In short, NNI has fully complied with the district court's orders.  It has produced approximately 330,000 documents in response to six subpoena requests, a collection you admit is "much larger" than you had anticipated and which you have not yet even begun to review.   And, NNI has gone above and beyond its obligations, particularly as a non-party, in responding in good faith to your inquiries regarding processing, format, and production of those documents even though, in most instances, an actual review of the production would answer them.  There is no attempt to "obfuscate" here, and certainly no valid basis to seek sanctions.  You will proceed as you see fit, but please be advised that if you do file a sanctions motion, we reserve the right to cross-move for all fees and costs incurred in responding to a motion so clearly lacking in merit, and for any other relief that may be appropriate.

**Samuel I. Portnoy**
Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
**Tel** (973) 596-4909 |**Fax** (973) 639-6218

**From:** Ari Weisbrot <aweisbrot@weisbrotlaw.com>
**Sent:** Wednesday, January 13, 2021 9:18 AM
**To:** Irwin Schwartz <ischwartz@blaschwartz.com>; Portnoy, Samuel I. <SPortnoy@gibbonslaw.com>
**Cc:** Dunican Jr., Patrick C. <PDunican@gibbonslaw.com>
**Subject:** RE: CalSTRS - Novo Nordisk; Meet and Confer Request

Hi Sam.   We are still waiting on the information set forth for the most recent time in an email last week.   I am not sure if you appreciate the Court' s distaste for your position.  For example,  I cannot imagine your theory as to why the deposition transcripts are not covered by multiple court orders.   I also do not understand how you think that your obfuscation will avoid sanctions.   But, in the interests of avoiding such unpleasantries, I will reiterate the following deficiencies that must be cured by end-of-business today.   Thereafter, we will seek the court's intervention and sanctions.  I hope it won't be necessary.   In addition to the deposition transcripts, these issues remain outstanding:

**Data Downloads:**

Just a quick email to let you know that both disclosures (Volume 1 and Volume 2) have been downloaded from the vendors FTP server.  I have verified the integrity of the download and it appears good.

Volume 1 is 211 Gigabytes in size.
Volume 2 is 151 Gigabytes in size,

Total size 362GB – that is a lot of data – as said previously I will be processing this once the initial Intella "test" import is found to work.  I will get you some counts of email/document numbers as soon as I am able (but that won't be in the immediate future – that will come after all processing is done).

**Import Testing – Intella Ediscovery Platform**

The next step is working this morning to import a test set of data (that I have prepared from the Volume 1 data disclosure.

Watch this space for an update later today as to how this went.

The vendor has been observing the data set structure (in a ***totally***sanitised manner – screen shots only,
with nothing visible in the way of names or clients, text etc….), they are of the opinion that the disclosure
looks normal and should demonstrate minimal (but never say zero) issues.

They have offered the services of their professional services team who specialise in the importation process,
so if we hit a road block – we can see what they would want to get us over a hump in the road – as a contingency.

**Todays Letter/Meeting with Court Person**

I seem to recall that some people would be speaking to the court today about the way we have been given
the data, I would certainly inject into that discussion that we were not given the specification (which is critical
for importing the data into any discovery platform) until yesterday, and that whilst the vendor has produced a
very very (almost useless at the technical level) high level ediscovery protocol document, we have not been provided with
any information in relation to the topics I put in my previous emails (relating to my  sincere concerns relating to password
protected documents, family level redactions etc…) again, all which are critical to ensure time is not
wasted doing something twice due to new documents being discovered as a result.

Playing devils advocate and looking at their defence to this, they would likely say – we never asked them for this level
of detail and it would have been prudent to have this discussion before the disclosure was even generated by our vendor
to ensure a smooth import process in a format that we (ok, me) could handle.

To which I would counter [quoting their protocol] that it is common that vendors discuss a disclosure and often
seek assistance in one way or another after the disclosure is released for download – what would happen if we were a relativity

shop and didn't have concordance (the format they disclosed in) – they would have to redo it in relativity format!, I guess
that before I was onboarded it was the defendant's vendor chose to use the format they saw fit.

Anyway, that's outside my remit – enjoy your discussion with them and this is just my 2 pence / øre / cents worth.

Well, I hope that all makes sense and I will update you today (around lunchtime UK) with my progress on this!

**Executive Summary:**

-   Both disclosures Vol 1 and Vol 2 have been successfully downloaded.
-   We should have some preliminary Intell (ediscovery platform) testing results today
-   The data size is much larger than anticipated (when factoring in Vol 2)
-   The data provided by the vendor seems good [further testing in progress], but we are still lacking information in relation to my questions relating to how they handled things such as encryption and redaction.



**NATHANIEL ARI WEISBROT, ESQ.**
**Attorney at Law**
201.788.6146 t/f
aweisbrot@weisbrotlaw.com

| New Jersey Office: | New York Office: |
|---|---|
| 1099 Allessandrini Avenue | 370 Lexington Avenue, Suite 2102 |
| New Milford, New Jersey 07646 | 65New York, NY 10017 |

**IMPORTANT CONFIDENTIAL LEGAL NOTICE:** This email and any attachments are for the exclusive and confidential use of the intended recipient.  If you are not the intended recipient, please do not read, distribute or take any action in connection with this this message.  If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system.  **WE DO NOT WAIVE CONFIDENTIALITY, OR ANY OTHER PRIVILEGE, INCLUDING THE ATTORNEY-CLIENT or WORK PRODUCT PRIVILEGE by the transmission of this message.   The inadvertent receipt of this message does not create an attorney-client relationship and the inadvertent recipient should not rely on any such privilege.**

**From:** Irwin Schwartz <ischwartz@blaschwartz.com>
**Sent:** Friday, January 8, 2021 2:52 PM
**To:** Portnoy, Samuel I. <SPortnoy@gibbonslaw.com>

**Cc:** Ari Weisbrot <aweisbrot@weisbrotlaw.com>
**Subject:** RE: CalSTRS - Novo Nordisk; Meet and Confer Request

Thanks again, Sam.

First, please you confirm that the ADR class action deposition transcripts and exhibits will be included in the production? If not, why not?

Second, we'd like NNI to go ahead to commence the production under the protocol that you provided, but our e-discovery vendor has a few questions, some of what may be redundant to the questions that I posed in my email below of just before 1 p.m. yesterday.   Please see the questions/observations set forth below.

**Hidden Information:**

Any EFILES (a/k/a ESI other than email)  that contain hidden information, should be provided in their native format (the protocol states).

What has the NNI's Ediscovery vendor done to ensure this information is shown in their "parsed/redacted" TIFF version of that example excel spreadsheet with a hidden column of figures.  Has that hidden data been a) detected, b) its existence flagged to us in the disclosure and c) included in the disclosure files?

**Encrypted Files:**

Any EFILES that are encrypted the NNI's vendor is obliged to "make reasonable efforts" to decrypt them at their processing (or "ingestion") stage of the Ediscovery process (protocol states).

We need to know all about these files, including  **how many files were encrypted** and more importantly **how many where not decrypted** – we want the natives of those files (so that we can attempt to decrypt) or at least work with the NNIs vendors to pursue reasonable efforts to access them.

There may be a flag in the load file with (a list of files) which has a column "encrypted" yes/no, but we hope to get ahead of this issue by getting answers to the questions above.

**Redacted Documents**

Any EMAILS that have EFILE ATTACHMENTS are deemed a family.  It is sometimes not possible to detach an Email attachment or other embedded object (a picture in an email for example)
and as a result the entire family has to be redacted (so that's the EMAIL AND the EFILE ATTACHMENTS).  Did that come up in the redaction process, such as where an EFILE attachment (a word document) may be
something that is not responsive, but the EMAIL which is the parent in that family IS something that should be produced.

Will NNI's ediscovery vendor provide us detail as to what, if any, redactions have been done in this way, so that we (as per the protocol) can discuss a sensible means to review the EMAIL without seeing the EFILE attachment or inline image that we are not entitled to due to privilege/confidentiality etc...

**Deduplication:**

There is a protocol provision that if an incriminating document has been found on Custodian A's computer and B and C and
D and E….etc… There will be a note next to the original (found on Custodian A's machine) in the concordance
database. Please have NNI's ediscovery vendor confirm that it followed this protocol provision in the deduplication process.

**Privilege Documents:**

Will you provide us a privilege log of all ESI excluded from the production set?

**Language Searches:**

Please confirm that all searches were performed in both English and Danish. Assuming the pull included both languages, how was interpretation done?

**List of Custodians and Key Words**

As we had no visibility into your negotiations with class counsel on the custodians and key words used for your search, please provide those lists to us.

Irwin

**Irwin B. Schwartz**

**BLA Schwartz, PC**
One University Avenue, Suite 302B
Westwood, MA 02090
**TEL** 781.636.5032 **FAX** 781.636.5090
www.BLASchwartz.com

BOSTON • WESTWOOD • NEW YORK • LOS ANGELES

The information contained in this communication is confidential and should be considered to be attorney work product and/or attorney-client privileged. This communication is the property of BLA Schwartz, PC and is intended only for the use of the addressee. If you are not the intended recipient, please notify the sender, delete the message, and note that any distribution or copying of this message is prohibited.

**From:** Portnoy, Samuel I. [mailto:SPortnoy@gibbonslaw.com]
**Sent:** Thursday, January 07, 2021 4:45 PM
**To:** Irwin Schwartz <ischwartz@blaschwartz.com>

**Cc:** Ari Weisbrot <aweisbrot@weisbrotlaw.com>
**Subject:** RE: CalSTRS - Novo Nordisk; Meet and Confer Request

It is attached.  I believe it addresses the vast majority of the questions from your vendor.

**Samuel I. Portnoy**
Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
**Tel** (973) 596-4909 |**Fax** (973) 639-6218

**From:** Irwin Schwartz <ischwartz@blaschwartz.com>
**Sent:** Thursday, January 7, 2021 4:06 PM
**To:** Portnoy, Samuel I. <SPortnoy@gibbonslaw.com>
**Cc:** Ari Weisbrot <aweisbrot@weisbrotlaw.com>
**Subject:** RE: CalSTRS - Novo Nordisk; Meet and Confer Request

Thanks Sam,

Could you send over the protocol agreed to in the DNJ securities litigation?

Thanks

Irwin

**From:** Portnoy, Samuel I. [mailto:SPortnoy@gibbonslaw.com]
**Sent:** Thursday, January 07, 2021 2:43 PM
**To:** Irwin Schwartz <ischwartz@blaschwartz.com>
**Cc:** Ari Weisbrot <aweisbrot@weisbrotlaw.com>
**Subject:** RE: CalSTRS - Novo Nordisk; Meet and Confer Request

Irwin,

I have passed these inquiries along to our ediscovery vendor and will provide responsive information as promptly as I can.  I want to note, however, as a general matter, our plan has been to follow the specifications governing production of documents in the DNJ securities litigation (agreed to by plaintiffs in that action), which we are happy to share with you for purposes of transparency.   We assumed you were expecting this, as you have never before raised any concerns regarding document processing/format and asserted in several filings in the district court that you expected the response to your subpoena would consist of documents already produced in the DNJ securities litigation.  It is also the most efficient way to proceed.  I can tell you now that, pursuant to the production protocol we have followed, certain file types will be produced natively, but email will not be, as that is not standard ediscovery practice and would be unreasonably burdensome.  I will pass along additional information in response to the questions below once I have it.

In short, we are prepared to produce in very short order (hopefully tomorrow), all documents responsive to CalSTRS's subpoena in the method and format set out in the production protocol in place in the DNJ securities litigation.  If that is not acceptable to you, and you would like to negotiate a

different production protocol, we would be happy to discuss it with you, but it will certainly delay our production.  If that is the case, I would ask that you confirm as soon as possible that you are asking us to put our production efforts on hold until such time as we can discuss and agree upon alternate formatting specifics.

- Sam

**Samuel I. Portnoy**
Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
**Tel** (973) 596-4909 |**Fax** (973) 639-6218

**From:** Irwin Schwartz <ischwartz@blaschwartz.com>
**Sent:** Thursday, January 7, 2021 12:54 PM
**To:** Portnoy, Samuel I. <SPortnoy@gibbonslaw.com>
**Cc:** Ari Weisbrot <aweisbrot@weisbrotlaw.com>
**Subject:** RE: CalSTRS - Novo Nordisk; Meet and Confer Request

Sam,

Here are some issues from our ESI processing provider that we'd like to address by agreement with you ahead of production:

**Format of the Electronic Documents :**

We request documents to be produced in native format (word documents, excel spreadsheets, email) as opposed to
a load file.  This is a mandatory point for us and it makes no sense for you to commence production until we have agreement on it.

Will the documents be formatted to a platform, such as Clearwell, Relativity, or Ringtail?

**Data Size, Type:**

Do you have a data set size in terms of how many gigabytes?  How will the data be packaged, such as on an encrypted hard drive, in an encrypted file container or is it in the cloud?

**Data Sources:**

What are the data sources, such as mobile phones, computers, network drives, SharePoint, cloud storage accounts or mailboxes?

**Custodians:**

How many custodians (employees/users) are involved?  In what site(s) and office(s)
are or were the custodians located?

**Collection Protocol:**

How did your vendor collect data from a) computers b) phones, c) network drives d) any other sources?

**Ingestion Protocol:**

Please provide a list of file types that your eDiscovery partner put into their system and searched. For example, we'd like to see something akin to the following:

Excel Spreadsheet: xls, xlsx, xlt
Word Documents: doc, docx, dotx
Power point: ???
… etc…etc..

**Exceptions & Encryption:**

Please ensure that all of the documents produced have been decrypted (passwords removed), or at least attempted and if unsuccessful a list has been produced.

If there are any documents that that could not be "OCR'd," please confirm how they have been treated. For example, if a custodian took photographs of email messages from their screen and saved them to their hard drive, what will be offered to make these files are properly categorized and we will be able to view them.

**Redactions:**

If you are redacting documents, how are you handling it? For example, if a word document contains some non-responsive information, are you withholding that entire word document or are you are covering redacted material?

**Deduping:**

Have you de-duplicated the data? If so, has it this been globally or by custodian or at some other level? Please explain.
level (there are other levels). There are dangers here which I will explain.

**Bates Numbering:**

Will the documents be bates numbered and, if so, under what system? Will you provide us the custodians by bates number?

Obviously, Sam, we'd like to come to an agreement with you on all these issues before you now so we don't have disputes down the road. Might we have a call to discuss the answers to these questions at your earliest convenience?

Thanks

Irwin


**From:** Portnoy, Samuel I. [mailto:SPortnoy@gibbonslaw.com]
**Sent:** Thursday, January 07, 2021 10:20 AM

**To:** Irwin Schwartz <ischwartz@blaschwartz.com>
**Cc:** Ari Weisbrot <aweisbrot@weisbrotlaw.com>
**Subject:** FW: CalSTRS - Novo Nordisk; Meet and Confer Request

I'm attempting to resend the below as I got a bounce back telling me the email could not be delivered to Irwin's email address.

**Samuel I. Portnoy**
Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
**Tel** (973) 596-4909 |**Fax** (973) 639-6218

**From:** Portnoy, Samuel I. <SPortnoy@gibbonslaw.com>
**Sent:** Thursday, January 7, 2021 10:17 AM
**To:** Ari Weisbrot <aweisbrot@weisbrotlaw.com>; Irwin Schwartz <ischwartz@blaschwartz.com>
**Subject:** RE: CalSTRS - Novo Nordisk; Meet and Confer Request

In terms of technical aspects, the production will be transferred electronically via FTP site. I had planned to send Ari an email with a link (and I believe a separate email with a password) that will include instructions detailing how the documents may be accessed and downloaded.

The document vendor advises that the production will be provided as load-ready files consisting of the following aspects:

- Concordance DAT file containing metadata
- Opticon OPT file
- Single page TIF images
- Native Files
- Extracted Text Files

In terms of file size, I will not have exact numbers until the vendor finishes loading/preparing the production, but I can tell you that the volume is substantial; the production will consist of hundreds of thousands of documents.  I can pass along the exact numbers once I receive them from the vendor.

That is all the information I have on technical details right now.  I think it might make sense for us to send you the production (again, hopefully tomorrow and if not early next week) and then, if you still have questions after you have had a chance to review it, we can schedule a call.  If you would like to have a call today I can be available at 11, but currently I do not have any information beyond what is identified above.

- Sam

**Samuel I. Portnoy**
Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310

**Tel** (973) 596-4909 |**Fax** (973) 639-6218

**From:** Ari Weisbrot <aweisbrot@weisbrotlaw.com>
**Sent:** Thursday, January 7, 2021 9:27 AM
**To:** Irwin Schwartz <ischwartz@blaschwartz.com>; Portnoy, Samuel I. <SPortnoy@gibbonslaw.com>
**Subject:** RE: CalSTRS - Novo Nordisk; Meet and Confer Request

Just an FYI, I can do from 10am-12pm or after 5pm.  But, if everyone can do another time today, you can proceed without me.



**NATHANIEL ARI WEISBROT, ESQ.**
**Attorney at Law**
201.788.6146 t/f
aweisbrot@weisbrotlaw.com

| New Jersey Office: | New York Office: |
|---|---|
| 1099 Allessandrini Avenue | 370 Lexington Avenue, Suite 2102 |
| New Milford, New Jersey 07646 | New York, NY 10017 |

**IMPORTANT CONFIDENTIAL LEGAL NOTICE:** This email and any attachments are for the exclusive and confidential use of the intended recipient.  If you are not the intended recipient, please do not read, distribute or take any action in connection with this this message.  If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system.  **WE DO NOT WAIVE CONFIDENTIALITY, OR ANY OTHER PRIVILEGE, INCLUDING THE ATTORNEY-CLIENT or WORK PRODUCT PRIVILEGE by the transmission of this message.   The inadvertent receipt of this message does not create an attorney-client relationship and the inadvertent recipient should not rely on any such privilege.**


**From:** Irwin Schwartz <ischwartz@blaschwartz.com>
**Sent:** Thursday, January 7, 2021 9:21 AM
**To:** Portnoy, Samuel I. <SPortnoy@gibbonslaw.com>
**Cc:** Ari Weisbrot <aweisbrot@weisbrotlaw.com>
**Subject:** RE: CalSTRS - Novo Nordisk; Meet and Confer Request

HI Sam,

May we please have times you or someone from your team is available to meet and confer today as discussed below?

Thanks

Irwin

**From:** Irwin Schwartz
**Sent:** Wednesday, January 06, 2021 2:32 PM
**To:** 'Portnoy, Samuel I.' <SPortnoy@gibbonslaw.com>

**Cc:** aweisbrot@weisbrotlaw.com
**Subject:** RE: CalSTRS - Novo Nordisk; Meet and Confer Request

Thanks Sam.  At a minimum, we'd like to understand the technical aspects of the production.  How the files are being produced, file size, format and the like.  Might we discuss that tomorrow?

Irwin

**From:** Portnoy, Samuel I. [mailto:SPortnoy@gibbonslaw.com]
**Sent:** Wednesday, January 06, 2021 2:31 PM
**To:** Irwin Schwartz <ischwartz@blaschwartz.com>
**Cc:** aweisbrot@weisbrotlaw.com
**Subject:** RE: CalSTRS - Novo Nordisk; Meet and Confer Request

Thanks, Irwin.  We are aware of the Third Circuit's ruling and plan to make our production promptly (likely on Friday, but potentially early next week depending on technical issues).  As a result, I do not think a meet and confer will be necessary, but I can be available tomorrow if you would like to have a call.

Happy New Year to both of you.

- Sam

**Samuel I. Portnoy**
Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
**Tel** (973) 596-4909 |**Fax** (973) 639-6218

**From:** Irwin Schwartz <ischwartz@blaschwartz.com>
**Sent:** Wednesday, January 6, 2021 11:56 AM
**To:** Portnoy, Samuel I. <SPortnoy@gibbonslaw.com>
**Cc:** aweisbrot@weisbrotlaw.com
**Subject:** CalSTRS - Novo Nordisk; Meet and Confer Request

Good morning Sam,

Given the ruling by the 3rd Circuit this morning denying the motion to stay and the Writ of Mandamus, we'd like to meet and confer with you today or tomorrow to hear your plans for Novo Nordisk's production.

I am generally available before 3 today and in the middle of the day tomorrow.  Are you available in either of those time frames?

Thanks

Irwin

**Irwin B. Schwartz**

**BLA Schwartz, PC**

One University Avenue, Suite 302B
Westwood, MA 02090
**TEL** 781.636.5032 **FAX** 781.636.5090
www.BLASchwartz.com

BOSTON • WESTWOOD • NEW YORK • SAN JOSE • LOS ANGELES

The information contained in this communication is confidential and should be considered to be attorney work product and/or attorney-client privileged.  This communication is the property of BLA Schwartz, PC and is intended only for the use of the addressee.  If you are not the intended recipient, please notify the sender, delete the message, and note that any distribution or copying of this message is prohibited.



**Disclaimer**
The contents of this message, together with any attachments, may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, printing, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify me immediately by reply e-mail or call Gibbons P.C. at 973-596-4500 and delete this message, along with any attachments, from your computer.